818 F.2d 30
Unpublished Disposition
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
Bobby Ray COBB, Defendant-Appellant.
 No. 86-5624.
 United States Court of Appeals, Fourth Circuit.
 Argued Feb. 3, 1987.
Decided May 4, 1987.
 
 Before WIDENER, CHAPMAN and WILKINSON, Circuit Judges.
 E. Fitzgerald Parnell, III (Weinstein & Sturges, on brief), for appellant.
 Debra Jo Stuart, Assistant United States Attorney (Charles R. Brewer, United States Attorney, on brief), for appellee.
 PER CURIAM:
 
 
 1
 Following a jury trial, the appellant, Bobby Ray Cobb, was convicted of one count of interstate transportation of stolen property and three counts of wire fraud. See 18 U.S.C. Sec.Sec. 1343, 2314. Cobb appeals, claiming that the trial court erred in (a) failing to grant his motion for judgment of acquittal, (b) failing to declare a mistrial following an arguably improper prosecutorial comment, and (c) curtailing defense counsel's cross-examination of a government witness. We find no merit in Cobb's exceptions, and we affirm.
 
 
 2
 At about 10:30 a.m. on December 20, 1985, Melvin Hodges, a senior electrical engineering designer for Duke Power Company, received a phone call in his office from a man claiming to be James Wendell Green. The man stated that he was a recently laidoff Duke Power employee and was interested in selling some of his company stock. The man purporting to be Green indicated that he was from out of town and was visiting his brother-in-law. For this alleged reason, the man persisted in demanding a cash transaction since he would have trouble cashing a check because he was from out of town. After hesitating because of the demand for a cash transaction, Hodges finally relented and obtained the cash while on his lunch hour.
 
 
 3
 A meeting was scheduled, and Hodges met the seller in the lobby of Hodges' office building. Hodges observed the man for some time in the well-lighted lobby during the course of the transaction. After the seller gave him the stock certificate, Hodges demanded that he sign both it and a stock transfer form. While signing these forms, the man claiming to be Green wrote very slowly and was careful to observe the stock certificate signature as he was signing the stock transfer form.
 
 
 4
 Before producing his cash payment, Hodges required the seller to show identification. Hodges was shown a laminated, plastic I.D. that had the name James Wendell Green written on it and appeared to be a Duke Power Company identification badge. The transaction was then completed.
 
 
 5
 When the seller told Hodges that he would be able to find his way out, necessitating a very complicated series of turns, Hodges became somewhat suspicious and maneuvered to a window to observe the ground floor exits of the building. Within a minute, Hodges saw the seller moving at a fast walk or jog up tbe sidewalk, apparently looking back to see if he was being followed. The seller then left the premises in a red 1981-1983 Mazda pick-up truck, similar to a Mazda pick-up truck owned by Cobb.
 
 
 6
 On December 23, 1985, Hodges, his suspicions increased, traveled to the Catawba Nuclear Station in South Carolina to report the matter. There, Hodges spoke to Johnny Robinson, head of security at the Catawba plant. On January 8, 1986, Hodges was requested by Robinson to return to Catawba. While there, Hodges sat in Robinson's darkened office to observe people entering and exiting the outer office area. After approximately twenty minutes, and after observing some 40 people, Hodges identified the appellant, Bobby Ray Cobb, who worked at Catawba, as the man who sold him the stock certificate.
 
 
 7
 The employee responsible for keeping records regarding the James Wendell Green stock certificate, Patsy Warren, testified that on December 8, 1985 she typed a letter to the real James Wendell Green indicating the enclosure of a stock certificate. She took the letter to the mail room the next morning. A search of the certified mail receipts revealed that the stock certificate had never reached the post office, and there was no indication that it had ever been mailed. There was also considerable evidence that Cobb not only had access to the mail room, but also was the Catawba employee primarily responsible for making employee identification cards.
 
 
 8
 Following three days of trial, the case went to the jury. The jury found Cobb guilty on all three counts of wire fraud and the one count of interstate transportation of stolen property.
 
 
 9
 The basis for Cobb's motion for judgment of acquittal and his assignment of error involves his contention that the government failed to prove an essential element of the crimes of which he was charged: that the stock certificate was, in fact, stolen. We disagree. As the government points out, it is a firmly established principle that the standard for our review requires us to view the evidence and all reasonable inferences arising from it in the light most favorable to the prevailing party, here the united States. Glasser v. United States, 315 U.S. 60, 80 (1942); United States v. Laughman, 618 F.2d 1067, 1075 (4th Cir.), cert. denied, 447 U.S. 925 (1980). We think the facts already recited and the reasonable inferences to be drawn from them amply support the jury's finding and the defendant's conviction. The jury's necessary finding, for example, supported by the evidence, was that it was Cobb who swindled Hodges and that Green's stock certificate was not delivered to Green but turned up in Cobb's hands.
 
 
 10
 Cobb's next argument is that he was prejudiced by impermissible prosecutorial comment. During the course of the direct examination of Ann Peeler, the Assistant United States Attorney asked the following question: "Did...[the defendant] suggest to you, Ms. Peeler, that it might be helpful if you couldn't remember some of the information you had given to the FBI before?" After defense counsel objected and requested a voir dire hearing outside the jury's presence, it became evident that the government lacked the requisite basis to propound such a question. The trial court denied defendant's motion for a mistrial. Subsequently, defense counsel re-asked the question before the jury, and Ms. Peeler testified that there was no such attempt to influence her testimony.
 
 
 11
 We hold that the trial court did not abuse its discretion in denying Cobb's motion for a mistrial. See United States v. Pinto, 755 F.2d 150, 153 (10th Cir. 1985) (trial court has broad discretion whether a mistrial is warranted when an improper question is asked and an appellate court will overturn that court's determination only where there is an abuse of discretion considered in the context of the entire trial). it is also clear that this question, while lacking a sufficient factual basis, did not cause substantial prejudice to the defendant in light of its isolated nature and the fact that the question was answered in the defendant's favor. See United States v. Bosby, 675 F.2d 1174, 1185 (11th Cir. 1982). Although we do not condone the government's attorney's action here, in reviewing this isolated remark in the context of the entire trial, we conclude it does not warrant reversal. The matter is probably placed in proper context by noting that, although the trial judge stated that he would admonish the jury and did not do so, that omission was not called to his attention.
 
 
 12
 Finally, Cobb argues that the judgment below should be reversed because of the curtailment of cross-examination of the government's witness, Melvin Hodges. The record shows that the proposed line of questioning was cumulative with one exception. There were three components of defense counsel's question. He asked if Hodges' positive identification of Cobb might have changed if he had known (1) that Cobb's fingerprints did not appear anywhere on the stock certificate or stock transfer form; (2) that witnesses would testify that Cobb was in Gaffrey, South Carolina at or about the time Hodges claimed he met with Cobb; and (3) that he had an excellent reputation and was never convicted of a crime. The questions contained in (1) and (2) had already been asked and answered in the jury's presence in substantially the same form prior to the voir dire hearing. Even if there was error in not permitting a response to the third prong of the question, we do not believe that the error was of sufficient substance to warrant reversal, and thus was, in law, harmless.
 
 Accordingly, the judgment of conviction is
 
 13
 AFFIRMED.