**UNITED STATES of America,**
**Plaintiff–Appellee,**

v.

**Timothy L. HARRIS, Defendant–Appellant.**

**No. 93–5671.**

United States Court of Appeals,
Fourth Circuit.

Argued April 14, 1994.

Decided June 22, 1994.

**ARGUED:** Randolph Brian Monchick, Asst. Federal Public Defender, Raleigh, NC, for appellant. Paul Arthur Raaf, Judge Advocate General's Corps, Fort Bragg, NC, for appellee.

**ON BRIEF:** James R. Dedrick, U.S. Atty., Tracy D. Knox, Sp. Asst. U.S. Atty., Fort Bragg, NC, for appellee.

Before RUSSELL, Circuit Judge, BUTZNER, Senior Circuit Judge, and DOUMAR, United States District Judge for the Eastern District of Virginia, sitting by designation.

Vacated and remanded by published opinion. Senior Judge BUTZNER wrote the opinion, in which Judge RUSSELL and District Judge DOUMAR joined.

## OPINION

BUTZNER, Senior Circuit Judge:

Timothy Harris appeals his conviction and sentence for driving while impaired by alcohol. He contends that the magistrate judge committed prejudicial error by submitting the criminal information to the jury without appropriate clarifying instructions in response to a question from the jury. He also assigns error to the magistrate judge's deviation from the assimilated North Carolina sentencing provision. The district court affirmed the magistrate judge's judgment and sentence. Concluding that the magistrate judge improperly instructed the jury and erred in sentencing Harris, we vacate the district court's judgment.

I

On January 23, 1992, a military police officer found Timothy Harris parked at the entrance gate to Pope Air Force Base. Suspecting that Harris was intoxicated, the MP administered field sobriety tests and a breath test. The United States subsequently charged Harris with Driving While Impaired in violation of N.C. Gen.Stat. § 20–138.1, assimilated by 18 U.S.C. § 13.

The magistrate court suppressed the prosecution's blood alcohol concentration evidence, which the government derived from the breath test. The validity of the suppression order is not an issue in this appeal.

At the trial, the MP testified to Harris' behavior at the entrance to the Base and to his performance in the field sobriety tests. Harris testified that he was not intoxicated but was sick and had pulled over to rest.

After the jury retired, the magistrate judge, without objection, sent the criminal information to the jury. It stated, in part, that Harris had "a blood alcohol concentration of .10% or more."

During its deliberation, the jury submitted a question to the court concerning the criminal information:

The charge refers to a statute concerning blood alcohol concentration of .10 percent. Is this a reference to the law or a statement of fact that the content was .10 percent or more? There was no mention of a breathalyzer test.

Harris's attorney asked the magistrate judge to instruct the jury that there was no evidence concerning Harris's blood alcohol concentration.

The magistrate judge did not grant Harris's request. Instead, he responded to the jury's question by instructing the jury as follows:

I listed for you during the first set of instructions the three elements which the government must prove beyond a reasonable doubt. I think your question probably refers more to that third element that requires the government to establish that at the time the defendant was driving the vehicle he was under the influence of an impairing substance.

This third element may be proved by evidence beyond a reasonable doubt establishing either one of the following alternatives: The third element may be proved by establishing that at the time the defendant was driving the vehicle, he was under the influence of an impairing substance. As I said, with respect to this alternative, alcohol is an impairing substance.

A person is under the influence of an impairing substance within the meaning and intent of the law when he has taken or consumed a sufficient quantity of that impairing substance to cause him to lose the normal control of his bodily or mental faculties or both to such an extent that there is an appreciable impairment of either or both.

The third element of impaired driving may also be established if the government proves that at the time the defendant was driving the vehicle he had consumed sufficient alcohol such that at any relevant time after the driving he had an alcohol concentration of .10 or more grams of alcohol per 210 liters of breath.

A relevant time is at any time after the driving in which the driver still has in his body alcohol consumed during or before the driving. In determining whether this third element of impaired driving has been established, bear in mind that it is not necessary for the government to prove both; that the defendant was under the influence of an impairing substance, and that he had an alcohol concentration of .10 or higher.

Either one will suffice. However, remember that even though the third element may be proved by either method, the government must still establish the existence of this third element beyond a reasonable doubt.

## II

■ When one of two independent grounds for conviction is unconstitutional or illegal, a general verdict cannot stand if the court instructed the jury that it could rely on either of the two grounds. *Griffin v. United States*, —— U.S. ——, ——, 112 S.Ct. 466, 472, 116 L.Ed.2d 371 (1991); *accord United States v. Taylor*, 966 F.2d 830, 834 (4th Cir. 1992). The verdict will stand if one of the grounds is "merely unsupported by sufficient evidence." —— U.S. at ——, 112 S.Ct. at 472.

■ The magistrate judge instructed the jury that it could rely on either of two independent grounds in determining whether Harris drove his vehicle while under the influence of an impairing substance. The jury, however, could not legally convict Harris on the second ground—that the defendant had a blood alcohol concentration of at least .10 percent. The court had suppressed evidence of blood alcohol concentration.

Nevertheless, the verdict may very well have rested on this illegal ground. The criminal information the judge sent to the jury contained a sworn statement by the prosecu-

tor that Harris had a blood alcohol concentration of at least .10 percent. Although initially the judge had told the jury that the criminal information was not evidence of guilt, the jury's question regarding the information indicates that they were confused about its role and may have considered the statement as one of fact. The judge's supplemental instructions did not clarify the function of the criminal information. This was not an error arising merely from insufficient evidence. The error arose because the jury illegally was allowed to rest conviction on the prosecutor's sworn statement in the information that Harris had a blood alcohol concentration of .10 percent or more. Because Harris had no opportunity to cross examine the prosecutor, he was denied his right of confrontation secured by the Sixth Amendment.

We conclude that the magistrate judge should not have sent the criminal information to the jury without deleting the reference to Harris's alleged blood alcohol level. This error was compounded by the equivocal supplementary instruction regarding Harris's blood alcohol concentration in response to the jury's question. We also conclude that the Sixth Amendment violation was plain error. The judgment convicting Harris must be vacated.

## III

Harris was charged with violating the Assimilative Crimes Act, 18 U.S.C. § 13, which assimilated N.C. Gen.Stat. § 20–138.1. The North Carolina statute provides that a person who is convicted of operating a vehicle on a public road while under the influence of alcohol shall be punished in accordance with N.C. Gen.Stat. § 20–179. Section 20–179(k), which the magistrate judge and both counsel agreed was applicable, provides:

A defendant subject to Level Five punishment may be fined up to one hundred dollars ($100.00) and must be sentenced to a term of imprisonment that includes a minimum term of not less than 24 hours and a maximum term of not more than 60 days. The term of imprisonment must be suspended, on the condition that the defendant:

(1) Be imprisoned for a term of 24 hours as a condition of special probation; or

(2) Perform community service for a term of 24 hours; or

(3) Not operate a motor vehicle for a term of 30 days; or

(4) Any combination of these conditions.

The judge may in his discretion impose any other lawful condition of probation and, if required by subsection (m), must impose the conditions relating to assessment, treatment, and education described in that subsection.

Pursuant to § 20–179(m) the judge must require a defendant to obtain a substance abuse assessment as a condition of probation. Upon recommendation of the assessing agency, the judge may require a defendant to participate in an appropriate treatment program at the defendant's expense.

The magistrate judge did "not consider himself bound strictly by the North Carolina statute." Addressing Harris he also stated, "I intend to impose a punishment which I think fits not only what took place, but which fits the story that you gave about what took place." The magistrate judge imposed a seven-day jail term, a $100 fine, a $25 assessment, 100 hours of community service, a substance abuse assessment, and probation for one year.

On appeal to the district court, Harris protested that the magistrate judge did not comply with the Assimilative Crimes Act, 18 U.S.C. § 13, and that he wrongfully enhanced his sentence for perjury in contravention of state and federal law then in effect.

Affirming the judgment that the magistrate judge imposed, the district court held that the Assimilative Crimes Act assimilates only the state's maximum and minimum sentences and that the magistrate judge could exercise discretion within this range, giving due regard to the federal guidelines. The district court also held that the magistrate judge did not enhance the sentence for perjury but instead "sentenced him within the

appropriate ranges established by North Carolina law."

## IV

The Assimilative Crimes Act provides that in the absence of federal law, a person who commits a state crime on a federal enclave "shall be guilty of a like offense and subject to a like punishment." 18 U.S.C. § 13(a). In *United States v. Press Publishing Co.*, 219 U.S. 1, 31 S.Ct. 212, 55 L.Ed. 65 (1911), the Supreme Court interpreted the predecessor of § 13 that spoke of the "same punishment" as follows:

[I]t is apparent that the statute, instead of fixing by its own terms the punishment for crimes committed on such reservations which were not previously provided for by a law of the United States, adopted and wrote in the state law, with the single difference that the offense, although punished as an offense against the United States, was nevertheless punishable only in the way and to the extent that it would have been punishable if the territory embraced by the reservation remained subject to the jurisdiction of the State.

219 U.S. at 9–10, 31 S.Ct. at 213–14.

The interpretation placed on the predecessor of § 13 applies to the requirement of "like punishment" stipulated in § 13(a). *See United States v. Minger*, 976 F.2d 185, 187–88 (4th Cir.1992). The phrase "like punishment," however, does not encompass every incident of a state's sentencing policy. For example, it has long been recognized that the Act does not require adherence to state parole eligibility. The rationale supporting this principle is that a federal prisoner, though convicted and sentenced in accordance with § 13, should be subject to federal correctional policies. This avoids confining two classes of prisoners in federal prisons. *See United States v. Smith*, 574 F.2d 988, 991–92 (9th Cir.1978).

When Congress enacted the Sentencing Reform Act of 1984, it repealed many conflicting provisions of the criminal code. But it did not repeal or amend § 13(a). Instead, 18 U.S.C. § 3551(a), as amended in 1990 to explicitly encompass § 13, provides:

Except as otherwise specifically provided, a defendant who has been found guilty of an offense described in any Federal statute, including sections 13 and 1153 of this title ... shall be sentenced in accordance with the provisions of this chapter so as to achieve the purposes set forth in subparagraphs (A) through (D) of section 3553(a)(2) to the extent that they are applicable in light of all the circumstances of the case.

Since Congress clearly recognized that both § 13(a) and § 3551(a) are "capable of coexistence," courts are obliged to regard "each as effective." *Ruckelshaus v. Monsanto Co.*, 467 U.S. 986, 1018, 104 S.Ct. 2862, 2881, 81 L.Ed.2d 815 (1984) (quotation and citation omitted). They "are not at liberty to pick and choose among congressional enactments...." *Morton v. Mancari*, 417 U.S. 535, 551, 94 S.Ct. 2474, 2483, 41 L.Ed.2d 290 (1974).

The Sentencing Commission outlined the means for reconciling §§ 13(a) and 3551(a) in U.S.S.G. § 2X5.1, comment. (n.1). This commentary reiterates that the Sentencing Guidelines apply to convictions under § 13. Most state penal statutes, like most federal statutes, stipulate a maximum and minimum sentence leaving to the trial court discretion to impose a punishment within these limits. Under such circumstances application of the federal Sentencing Guidelines to an assimilative crime is relatively straightforward. A federal judge, like his state counterpart, has discretion to impose a sentence within the state statutory limits. In exercising this discretion, a federal judge must adhere to the most analogous offense guideline. In U.S.S.G. § 2X5.1, comment. (n.1), the Sentencing Commission has set forth appropriate guidelines and policy statements that can be applied under such circumstances.

*United States v. Young*, 916 F.2d 147, 150–51 (4th Cir.1990), upon which the district court relied, is consistent with § 2X5.1. But neither *Young* nor any other case that has come to our attention has dealt with a situation such as we have before us.

## V

■ Harris's offense is a class B misdemeanor, since the maximum sentence under § 20–179(k) is more than 30 days but less than six months. Other subsections of § 20–179 authorize more severe punishment than that permitted by subsection (k). But the government did not prove the elements necessary to bring Harris within the purview of the other subsections.

The Sentencing Guidelines do not apply to a class B misdemeanor, and the court is directed to impose a sentence authorized by statute. *See* U.S.S.G. § 1B1.9 and comment. (n.1). Two statutes are pertinent. Section 13(a) directs the court to determine the punishment the state prescribes for the assimilated offense and then impose "like punishment." Section 3551(a) directs the court to sentence a defendant "so as to achieve the purposes set forth in subparagraphs (A) through (D) of section 3553(a)(2) to the extent that they are applicable in light of all the circumstances of the case."

Title 18 U.S.C. § 3553(a) directs a court to consider the following factors when imposing a sentence:

> (2) the need for the sentence imposed—
> (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
> (B) to afford adequate deterrence to criminal conduct;
> (C) to protect the public from further crimes of the defendant; and
> (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner; . . . .

It is readily apparent that N.C. Gen.Stat. § 20–179(k) satisfies the requirements of § 3553(a)(2). Moreover, nothing in § 3553(a)(2) precludes application of the Assimilative Crimes Act.

The North Carolina legislature has accorded the trial court broad discretion in § 20–179(k) subject to one important restriction regarding punishment—initially the state trial court cannot imprison the defendant more than 24 hours. This mandatory restriction in a very real sense is the maximum sentence a state trial judge can impose under § 20–179(k), unless the defendant later violates a condition of probation. The "like punishment" clause of § 13 of the Act places the same restriction on a federal court that is implementing the Assimilative Crimes Act. The federal court, like its state counterpart, cannot imprison a defendant more than 24 hours, unless he violates probation. Nor can the federal court impose a fine in excess of $100. With respect to conditions of probation, both state and federal courts have considerable discretion, except that the federal court should exercise its discretion in accordance with § 3553(a)(2).

The judgment of the district court is vacated, and the case is remanded for further proceedings consistent with this opinion.

*VACATED AND REMANDED.*