**UNITED STATES of America**

v.

**Michael B. SLATKIN.**

**No. 94–1432R.**

United States District Court,
D. Maryland.

May 30, 1995.

## OPINION

ROSENBERG, United States Magistrate Judge.

The above named defendant is charged in a case pending before the undersigned United States Magistrate Judge at Aberdeen Proving Ground, Maryland, with a violation of the Assimilative Crimes Act (ACA), 18 U.S.C. Section 13, adopting MD.Code Ann., Art. 27 Section 36B (transporting a handgun). Under Maryland law, the offense is a misdemeanor for which a term of imprisonment of not more than three years may be imposed upon conviction as well as a fine not to exceed twenty-five hundred dollars ($2,500.00) or both fine and imprisonment. Due to the possible maximum term of imprisonment, the Court questioned whether the charge was one which could be tried before a United States Magistrate Judge upon consent of the defendant. The Court requested counsel for the parties to submit a legal memorandum on this issue.

Both sides have taken the position in their memorandum that the Court has jurisdiction in light of *United States v. Kelly,* 989 F.2d 162 (4th Cir.1993), *cert. denied,* 510 U.S. 854, 114 S.Ct. 158, 126 L.Ed.2d 119 (1993). It is also the contention of the parties, that the Court may hear the case as a misdemeanor but may not impose a term of imprisonment upon conviction in excess of one year in accordance with the *Kelly* decision. On the other hand, the Government represents that it could be argued that the instant case may be distinguishable from *Kelly* because of the three year penalty provision; whereas, the maximum term of imprisonment for the offense assimilated in *Kelly* was limited to not more than eighteen months. The Government represents that although the argument may be reasonable, it does not appear to be

supported by the law, and a reading of *Kelly* indicates that such a distinction does not appear to be contemplated.

For the reasons set forth below, this Court is satisfied that *Kelly* is distinguishable based upon the three year term of imprisonment that is authorized by the assimilated State statute in light of congressional policy in the enactment of the Assimilative Crimes Act and the fact that in some circumstances a two year State misdemeanor is not granted felony status under federal law while such status is given to State misdemeanors that provide for imprisonment in excess of two years.

18 U.S.C. Section 13 in pertinent part provides:

> (a) Whoever within or upon any of the places now existing or hereafter reserved or acquired as provided in section 7 of this title, is guilty of any act or omission which, although not made punishable by any enactment of Congress, would be punishable if committed or omitted within the jurisdiction of the State, Territory, Possession, or District in which such place is situated, by the laws thereof in force at the time of such act or omission, shall be guilty of a like offense and subject to a like punishment.

It is generally understood that "like punishment" requires a federal court to impose a sentence within any minimum or maximum term of imprisonment established by State law. *See, United States v. Harris,* 27 F.3d 111 (4th Cir.1994); *United States v. Price,* 812 F.2d 174 (4th Cir.1987); *United States v. Young,* 916 F.2d 147 (4th Cir.1990); *United States v. Pinto,* 755 F.2d 150 (10th Cir.1985); *United States v. Garcia,* 893 F.2d 250 (10th Cir.1989), *cert. denied,* 494 U.S. 1070, 110 S.Ct. 1792, 108 L.Ed.2d 793 (1990); *United States v. Leake,* 908 F.2d 550 (9th Cir.1990). However, the phrase "like punishment" does not encompass every incident of a state's sentencing policy, and federal courts consistently decline to assimilate provisions of State law through the ACA if the State law provision would conflict with federal policy. *United States v. Harris, supra. United States v. Kelly, supra.* The areas which have been found to conflict with federal policy so

as not to warrant assimilation have, for the most part, involved matters pertaining to parole, probation, good time credits and special assessments. *See, United States v. Harris, supra; United States v. Davis,* 845 F.2d 94 (5th Cir.1988); *United States v. Pinto, supra; United States v. Vaughan,* 682 F.2d 290 (2d Cir.1982), *cert. denied,* 459 U.S. 946, 103 S.Ct. 261, 74 L.Ed.2d 203; *United States v. Smith,* 574 F.2d 988 (9th Cir.1978), *cert. denied,* 439 U.S. 852, 99 S.Ct. 158, 58 L.Ed.2d 156; *United States v. Duncan,* 724 F.Supp. 286 (D.Del.1989).

The undersigned is not aware of any case other than *Kelly* and *United States v. Kendrick,* 636 F.Supp. 189 (E.D.N.C.1986), upon which *Kelly* primarily relied, for the proposition that the maximum term of State imprisonment is not assimilated because of the federal policy limiting misdemeanors to terms of imprisonment of one year or less. *See,* 18 U.S.C. Sections 3559 and 3581. In addition, the *Kelly* Court relied upon the federal policy limiting the jurisdiction of United States Magistrate Judges to decide misdemeanor offenses which, under federal policy, are offenses for which a term of imprisonment in excess of one year is not authorized. *See,* 18 U.S.C. Section 3401(a) and 28 U.S.C. Section 636(a).

In *Kendrick,* a motion was filed with the District Court for reassignment of the case to a United States Magistrate. Under North Carolina law any offense for which a term of imprisonment of two years or less could be imposed was considered a misdemeanor. It was contended that as the defendant was charged with a two year misdemeanor under the ACA, the case was one which could not be tried before a United States Magistrate. The Court concluded, that because of the federal policy defining felony and misdemeanor offenses, if the Court assimilated the two year maximum penalty, the State misdemeanor would be converted to a federal felony. The Court believed that this was inappropriate since converting the offense to a felony would also result, in the event of a conviction, in the defendant's loss of various civil rights; such as, the right to vote, hold public office, purchase firearms, and sit on a jury. Accordingly, the Court held that in

order for the assimilated offense to remain a misdemeanor, the maximum term of imprisonment which could be imposed upon conviction would be limited to one year whether the case was decided by a United States Magistrate or a United States District Judge. In limiting the maximum term of imprisonment to one year the case fell within the jurisdiction of the United States Magistrate, and the defendant's motion to reassign the case to a United States Magistrate was granted.

In *Kelly,* the defendant consented to a trial before a United States Magistrate Judge reserving the right to challenge the jurisdiction of the Magistrate Judge to try the case. It was contended that the assimilated offense could not be tried before the Magistrate Judge because the State offense provided for a possible term of imprisonment of not more than eighteen months. In assuming jurisdiction, however, the Magistrate Judge agreed that upon conviction any term of imprisonment would not exceed one year. Furthermore, the defense contended that in order to proceed with the prosecution, it was necessary for the Grand Jury to return an indictment because the State penalty provision exceeded one year.

As related above, the Court in *Kelly* relied primarily on the rationale of *Kendrick* as it related to the federal policy defining misdemeanor and felony offenses and the limited trial jurisdiction of United States Magistrate Judges to offenses defined as misdemeanors or infractions. *See,* 18 U.S.C. Sections 3401(a), 3559, 3581; 28 U.S.C. Section 636(a). The Court did not discuss the loss of civil rights if the offense were considered a federal felony nor did the Court indicate that the maximum term of imprisonment of eighteen months provided by State law would not be assimilated if the case were tried by a United States District Judge. The Court was not called upon to limit the authority of a District Judge as was done by the Court in *Kendrick.*

In arriving at its decision in *Kelly,* the Court stated:

> ... As Judge Depree concluded in *Kendrick,* it simply makes good sense to permit the kind of case presently before us in this appeal to be tried by a Magistrate Judge. That can be accomplished, as in *Kendrick* and in this case, by limiting the maximum sentence which the Magistrate Judge can impose in accord with 18 U.S.C. Sections 3401 and 1. In *United States v. Robinson, supra,* 495 F.2d at 33—a case which seemingly also involved a challenge concerning a magistrate's jurisdiction—our opinion referred only to the ACA's non-selective application. In *Robinson,* we did not reach or mention the federal policy exception or seemingly have before us the type of federal policy contention stated by the government in this appeal. That policy contention relates to the need to promote the efficiency of our federal criminal process by permitting offenses of the type herein involved to be tried by a Magistrate Judge and by not requiring all such offenses to be tried before a federal District Judge. The need in that regard underlies the Congressional determination to confer certain jurisdiction upon Magistrate Judges and speaks for itself. Accordingly, we hold that the trial of this criminal action was within the jurisdiction of the United States Magistrate Judge and that the United States was not required to proceed against *Kelly* by means of an indictment.

What the Court in *Kendrick* and *Kelly* seemingly ignored was the overriding federal policy that sentence be imposed within the minimum and maximum terms permitted by State law. The term of imprisonment is usually considered the most powerful indicator of the seriousness of an offense. In the context of determining a defendant's right to a jury trial the Supreme Court stated:

> In recent years, however, we have sought more "objective indications of the seriousness with which society regards the offense." *Frank v. United States,* 395 U.S. 147, 148, 89 S.Ct. 1503, 1505, 23 L.Ed.2d 162 (1969). "[W]e have found the most relevant such criteria in the severity of the maximum authorized penalty." *Baldwin v. New York,* 399 U.S. 66, 68, 90 S.Ct. 1886, 1888, 26 L.Ed.2d 437 (1970) (plurality opinion); see also *Frank, supra,* at 159, 89 S.Ct. at 1510–11. In fixing the maximum penalty for a crime, a legislature "in-

clude[s] within the definition of the crime itself a judgment about the seriousness of the offense." *Frank, supra,* at 149, 89 S.Ct. at 1505. The judiciary should not substitute its judgment as to seriousness for that of a legislature, which is "far better equipped to perform the task, and [is] likewise more responsive to changes in attitude and more amenable to the recognition and correction of their misperceptions in this respect." *Landry v. Hoepfner,* 840 F.2d 1201, 1209 (C.A.5 1988) (en banc), cert. pending, No. 88–5043.

In using the word "penalty," we do not refer solely to the maximum prison term authorized for a particular offense.... A legislature's view of the seriousness of an offense also is reflected in the other penalties that it attaches to the offense.... Primary emphasis, however, must be placed on the maximum authorized period of incarceration. Penalties such as probation or a fine may engender "a significant infringement of personal freedom," id, at 151, 89 S.Ct. at 1506, but they cannot approximate in severity the loss of liberty that a prison term entails. Indeed, because incarceration is an "intrinsically different" form of punishment, *Muniz v. Hoffman,* 422 U.S. 454, 477, 95 S.Ct. 2178, 2191, 45 L.Ed.2d 319 (1975), it is the most powerful indication of whether an offense is "serious."

*Blanton v. North Las Vegas,* 489 U.S. 538, 541–42, 109 S.Ct. 1289, 1292, 103 L.Ed.2d 550 (1989).

■ Under the law of the State of Maryland, there is no bright line rule defining a misdemeanor; such as, the federal rule limiting misdemeanors to terms of imprisonment of one year or less or the rule in North Carolina, as related in *Kendrick,* limiting misdemeanors to terms of imprisonment of two years or less. In Maryland, felonies are those crimes which were such at common law or have been so declared by statute. *Dutton v. State,* 123 Md. 373, 378, 91 A. 417 (1914); *Bowser v. State,* 136 Md. 342, 345, 110 A. 854 (1920). Generally, all crimes less than felonies are misdemeanors, and in most instances, the statute defining the offense will ordinarily state whether same is a felony or misdemeanor.

■ Without attempting to determine the maximum term of imprisonment which can be imposed for the numerous misdemeanor offenses in the State of Maryland, the footnote below sets forth a representative sample. As can readily be seen, statutory misdemeanors in Maryland may provide for a term of imprisonment well in excess of two years. As indicated in the footnote, the maximum term of imprisonment for some misdemeanors in Maryland may be three, five, eight, ten, twelve, and even twenty years.[1] It is, therefore, clear that the policy behind the Assimilated Crimes Act would be reduced to a nullity if the maximum term of imprisonment for these offenses upon assimilation would be limited to not more than one year,

1. All references are to Md.Code Ann. art. 27: Sec. 1—Abduction of person under 16, 8 years; Sec. 9—Threats of arson, 10 years; Sec. 22—Certain bribery offenses, 12 years; Sec. 25—Embracery, acceptance of bribe by juror, 6 years; Sec. 26—Obstruction of justice, 5 years; Sec. 32—Burglary in fourth degree, 3 years; Sec. 35—Breaking and entering motor vehicles, 3 years; Sec. 35D—Abuse or neglect vulnerable person, 5 years; Sec. 35E—Child selling, 5 years; Sec. 35B(b)(ii) –Prior conviction for wearing or carrying handgun, 10 years; Sec. 36B(d)—Use of handgun in crime of violence, 20 years; Sec. 111—Malicious destruction of property, 3 years; Section 120—Reckless endangerment, 5 years; Sec. 121B—Stalking, 5 years; Sec. 139A—Manufacture or possessing molotov cocktail, 5 years; Sec. 146(c)(2) and (3)—Illegal access to computer, etc., 5 years; Sec. 156—False fire alarm, 5 years; Sec. 287—Distribute, possession of paraphernalia, 4 years; Sec. 287A—Delivery by person over 18 years to one 3 years junior and under 18, 8 years; Sec. 335A—Indecent exposure, 3 years; Sec. 349—Unauthorized use of livestock, vehicle or boat, 4 years; Sec. 366—Lotteries, second offense, 5 years; Section 388—Manslaughter by vehicle, 10 years; Sec. 388A—Homicide by motor vehicle while intoxicated, 5 years; Sec. 426—Pandering, 12 years; Sec. 427—Placing person in prostitution, 10 years; Sec. 457—Removing bond-wires, nuts and bolts from railway tracks or possession of same, 5 years; Sec. 458—Shooting or throwing at a train, 5 years; Sec. 470A(c)(3)—Certain religious or ethnic crimes, 3 years; Sec. 481C—Short-barreled rifle or shotgun, 5 years; Sec. 554—Unnatural sexual practice, 10 years; Sec. 555 A—Unlawful use of telephone, 3 years; Sec. 558 and 560—Common thief or pickpocket, 5 years; Sec. 561A—Threats against State officials, 3 years.

and the seriousness of the offenses would be needlessly minimized in derogation of the legislative will of both the federal Government and the State of Maryland. Carried to their logical conclusion *Kelly* and *Kendrick* would mandate a maximum term of imprisonment of not more than one year for any assimilated State misdemeanor tried before a United States Magistrate Judge in the District of Maryland regardless of the maximum term of imprisonment permitted by State law.

The decision of the Court in *Kelly* was a practical, common sense decision in a case involving a term of imprisonment of only eighteen months under State law. It is reasonable for such a case to be tried by a United States Magistrate Judge with a defendant's consent in order to promote the efficiency of our federal criminal process as stated in *Kelly*. However, in order to promote the policy behind the enactment of the ACA, a line must be drawn limiting the trial jurisdiction of United States Magistrate Judges in these cases unless Congress subsequently extends such jurisdiction in cases involving assimilated State misdemeanors.

Based upon the above, it is clear that *Kelly* should not control this case involving an assimilated three year State misdemeanor. Furthermore, the concerns of the Court in *Kendrick* involving a defendant's possible loss of various civil rights if convicted of what would amount to a federal felony is entitled to little weight in light of the law of the State of Maryland.

■ "The term 'civil rights' generally includes the right to vote, the right to hold public office, and the right to serve on a jury. *See, United States v. Cassidy*, 899 F.2d 543, 549 (6th Cir.1990) ... Maryland, unlike many States, has no general restoration of rights statute for criminal offenders nor does it issue to felons who have completed their sentences certificates of discharge restoring their rights. There are instead specific statutory sections addressing various civil rights." *United States v. Hassan El*, 5 F.3d 726, 734 (1993), *cert. denied*, 511 U.S. 1006, 114 S.Ct. 1374, 128 L.Ed.2d 50 (1994).

■ If the assimilated offense is converted to a federal felony, the consequences to the defendant would not necessarily result in his being deprived of the right to vote or hold public office permanently. Under the constitution of Maryland, Art. 1, Section 4 and Section 12, one must be a qualified and registered voter in order to vote and to serve in an elective office. In order to be registered as a qualified voter an individual may register, even if previously convicted of a felony, so long as there is only one such conviction and the entire sentence for such conviction has been fully served. *See*, Md. Code Ann. art. 33 Section 3–4(c). In addition, in Maryland a defendant faces a substantial loss of civil rights if convicted of certain misdemeanors, depending on the sentence imposed, by losing the right to sit on a jury. Md. Cts. & Jud. Proc.Code Ann. Section 8–207(b)(5) provides:

> (b) Grounds for disqualifications.—A person is qualified to serve as a juror unless he:
>
> (5) Has a charge pending against him for a crime punishable by a fine of more than $500, or by imprisonment for more than six months, or both, or has been convicted of such a crime and has received a sentence of a fine of more than $500, or of imprisonment for more than six months, or both, and has not been pardoned.

*See United States v. Hassan El, supra.*

Accordingly, if the offense is considered a felony, the defendant will lose the right to vote or to hold public office only until the sentence has been fully served unless he has a prior felony conviction. In addition, he may lose the right to sit on a jury, if convicted, whether the offense is considered a misdemeanor or a felony.

Moreover, as the loss of "civil rights" is usually determined by State law, the Court assumes that the State of Maryland may still consider, if it so desires, an assimilated State misdemeanor as a misdemeanor in determining the loss of civil rights under State law regardless of how the offense may be classified by the federal Government.

Without deciding the issue, it may well be that the classification of the offense is irrelevant when one considers that the primary emphasis in determining the seriousness of

an offense is the maximum term of imprisonment that can be imposed. *See, United States v. Manning,* 700 F.Supp. 1001 (W.D.Wis.1988). It may also be that the "like punishment" provision of the Assimilative Crimes Act requires the assimilated offense to be given the same classification it is given under State law. *See, United States v. Easley,* 387 F.Supp. 143 (N.D.Cal.1994). *See also, United States v. Holley,* 444 F.Supp. 1361, 1363 (D.Md.1977).

Because of the situation in Maryland, the fact that the classification of the offense may be irrelevant, the fact that it may be appropriate to assimilate the State offense as a misdemeanor rather than a felony, and since the State of Maryland may be free to rely on its own classification of the assimilated offense, this Court does not share the concerns articulated by the court in *Kendrick* regarding a defendant's loss of civil rights.[2]

Because the maximum term of imprisonment is the most significant factor to be considered in determining the seriousness of an offense, other than an offense for which capital punishment may be imposed, this Court is satisfied that *Kelly,* although binding upon this Court is distinguishable. Congress does not always treat offenses punishable by a term of imprisonment exceeding one year as a felony.

Under 18 U.S.C. Section 922(g), generally referred to as the felon in possession of a firearm statute, an individual is guilty of a federal offense if he possesses in or affecting commerce any firearm if previously convicted in any Court of a crime punishable by imprisonment for a term exceeding one year. A crime punishable by imprisonment for a term exceeding one year excludes, however, any State offense classified under State law as a misdemeanor and punishable by a term of imprisonment of two years or less. 18 U.S.C. Section 921(a)(20). *See also, United States of America v. Charles Christopher Milton,* 52 F.3d 78, 79 n. 1 (4th Cir.1995). Furthermore, under the Armed Career Criminal Enhancement provision of 18 U.S.C. Section 924(e) an individual convicted of a violation of 18 U.S.C. Section 922(g) and who has had at least three prior convictions for violent felonies or serious drug offenses

must be sentenced to a mandatory minimum sentence of not less than fifteen years imprisonment. The term "violent felony" includes, *inter alia,* any crime punishable by imprisonment for a term exceeding one year as further defined in 18 U.S.C. Section 921(a)(20) which, as stated above, excludes "any State offense classified by the laws of the State as a misdemeanor and punishable by a term of imprisonment of two years or less." *United States v. Hassan El, supra,* pp. 732–733.

In light of the firearm statutes referred to herein, the federal policy limiting misdemeanors to terms of imprisonment of one year or less is not so firmly entrenched so as not to warrant an exception where appropriate; especially, in view of the congressional policy in enacting the Assimilative Crimes Act. Therefore, the Court is satisfied that *Kelly* is binding authority only in cases in which the assimilated State misdemeanor provides for a maximum term of imprisonment of two years or less. In addition, in light of *Kelly,* the Court will limit its sentence to not more than one year in prison in such cases. Conversely, any assimilated State misdemeanor for which a term of imprisonment in excess of two years may be imposed shall be considered a felony in accordance with federal policy, as set forth in the firearm statutes referred to above, in determining the trial jurisdiction of a United States Magistrate Judge. As such, the offense is beyond the trial jurisdiction of a United States Magistrate Judge due to the federal policy limiting the trial jurisdiction of United States Magistrate Judges to misdemeanors and infractions.

As a result of the principles set forth herein, the Assimilative Crimes Act is alive and well in any case involving an assimilated State misdemeanor in the District of Maryland.

Accordingly, for the reasons stated herein, the Court concludes that it does not have jurisdiction to try the instant case since the maximum term of imprisonment provided by State law exceeds two years. Should the Government desire to proceed with the prosecution, it is suggested that the Government refer the case to the Clerk of the Court to be assigned to a United States District Judge or

2. It would be appropriate for Congress to amend the ACA to resolve the classification issue.

take any other action which may be deemed to be appropriate.[3]

3. Due to the decision of the Court as set forth herein, the Court finds it unnecessary to decide a constitutional question which the Court suggested to counsel for the parties as ordinarily constitutional issues should be avoided when not necessary for the decision. Although the issue may have merit, counsel for the parties discussed the issue in a perfunctory fashion, and they may have not understood the issue suggested by the Court.

In any event, the issue concerns whether the rationale of *United States v. Jackson*, 390 U.S. 570, 88 S.Ct. 1209, 20 L.Ed.2d 138 (1968) applies to this case. In *Jackson*, the Supreme Court struck down the death penalty provision of the Federal Kidnapping Act because the death penalty could be imposed only if the defendant were convicted by a jury. By electing a court trial the defendant could avoid any possibility of a death sentence. The Court held that the procedure for the imposition of the death sentence was unconstitutional in violation of the defendant's constitutional right to a jury trial under the Sixth Amendment of the United States Constitution as it needlessly penalized the assertion of the right to trial by a jury and needlessly encouraged a waiver of jury trial.

Counsel in this case contend that in light of *Kelly*, it is to the defendant's benefit to elect trial before a United States Magistrate Judge rather than to exercise his statutory and constitutional right to trial before an Article III Judge.

If the case is tried before a United States Magistrate Judge, under *Kelly*, the maximum term of imprisonment is one year; whereas, if the case is tried before a United States District Judge, the maximum possible term of imprisonment is three years. Accordingly, it may be argued that the disparity in the sentence that may be imposed by the different judicial officers suffers from a vice similar to that which the Supreme Court struck down in *Jackson*. It may well be that this disparity needlessly chills and penalizes a defendant's assertion of his statutory and constitutional right to trial before an Article III Judge by needlessly encouraging a defendant to elect trial before a United States Magistrate Judge in order to avoid the possibility of the greater term of imprisonment which can be imposed by a United States District Judge. Apparently, this theory was not raised or considered by the *Kelly* Court. However, although the Court does not decide the issue, if the rationale of *Jackson* applies, it is likely that the *Kelly* decision may not withstand constitutional scrutiny even on its own facts.

