UNITED STATES of America,
Plaintiff–Appellee,

v.

Andrew Leander PIERCE,
Defendant–Appellant.

No. 95–5323.

United States Court of Appeals,
Fourth Circuit.

Argued Nov. 3, 1995.

Decided Jan. 26, 1996.

**ARGUED:** George Alan DuBois, Assistant Federal Public Defender, Raleigh, North Carolina, for Appellant. John Samuel Bowler, Assistant United States Attorney, Raleigh, North Carolina, for Appellee. **ON BRIEF:** Janice McKenzie Cole, United States Attorney, Randy L. Havlicak, Special Assistant United States Attorney, Office of the Staff Judge Advocate, Fort Bragg, North Carolina, for Appellee.

Before ERVIN, Chief Judge, and WILKINS and LUTTIG, Circuit Judges.

Affirmed by published opinion. Judge WILKINS wrote the opinion, in which Chief Judge ERVIN and Judge LUTTIG joined.

## OPINION

WILKINS, Circuit Judge:

Andrew Leander Pierce appeals his sentence of 30 days imprisonment followed by a one-year term of supervised release, which was imposed following the revocation of his initial sentence of probation for driving while impaired by alcohol in violation of North Carolina law as assimilated by 18 U.S.C.A. § 13 (West Supp.1995). Pierce contends that the sentence is unlawful because it contains a period of supervised release, a punishment not authorized by the assimilated North Carolina statute. He further argues that even if he can be sentenced to supervised release, the total punishment—the term of imprisonment plus the supervised release—may not exceed the maximum term of incarceration allowed under state law. We affirm.

## I.

On May 6, 1994, military police arrested Pierce for driving while impaired on the United States Army Base at Fort Bragg, North Carolina. Because there is no federal law prohibiting such conduct, he was charged under the Assimilative Crimes Act (ACA), 18 U.S.C.A. § 13, with violating the applicable North Carolina statute prohibiting impaired driving, N.C.Gen.Stat. § 20–138.1 (1993). Pierce pled guilty and was sentenced to a one-year term of probation.

After Pierce committed several probation violations, a magistrate judge revoked his probation and sentenced him to 30 days imprisonment to be followed by a one-year term of supervised release. The district court affirmed. *See* 18 U.S.C.A. §§ 3401–3402 (West 1985 & Supp.1995). On appeal, Pierce challenges his sentence on two grounds, both of which present issues of first impression in this circuit.

## II.

A federal defendant who "violates a condition of probation at any time prior to expiration ... of the term of probation" may have the probation revoked and be resentenced. 18 U.S.C.A. § 3565(a) (West 1985 & Supp. 1994). In imposing sentence upon the revocation of probation, a federal court must consider the factors set forth in 18 U.S.C.A. § 3553(a) (West 1985 & Supp.1995), including the "applicable guidelines or policy statements issued by the Sentencing Commission," *id.* The policy statements addressing the appropriate sentencing range upon probation revocation are contained in Chapter Seven of the sentencing guidelines. *See* United States Sentencing Commission, *Guidelines Manual,* Ch. 7 (Nov.1994).

 In the context of a sentence imposed for a crime assimilated pursuant to § 13, the sentence that a federal court properly may impose upon the revocation of probation is further limited. The ACA provides that in the absence of a governing federal statute, a person who commits a state crime on a federal enclave "shall be guilty of a like offense and subject to a like punishment." 18 U.S.C.A. § 13(a); *United States v. Harris,* 27

F.3d 111, 115 (4th Cir.1994). Thus, one who commits an act illegal under state law but not prohibited by federal law in an area of federal jurisdiction may be sentenced "only in the way and to the extent" that the person could have been sentenced in state court. *United States v. Press Publishing Co.,* 219 U.S. 1, 10, 31 S.Ct. 212, 214, 55 L.Ed. 65 (1911); *United States v. Minger,* 976 F.2d 185, 187–188 (4th Cir.1992). For instance, a term of imprisonment imposed for an assimilated crime may not exceed the maximum term established by state law. *United States v. Young,* 916 F.2d 147, 150 (4th Cir.1990).

 This does not mean, however, that the federal courts are completely bound by state sentencing requirements. As noted by this court, "[t]he phrase 'like punishment' ... does not encompass every incident of a state's sentencing policy." *Harris,* 27 F.3d at 115. Rather, the term "like punishment," as used in the ACA, requires only that the punishment be similar, not identical. *See United States v. Kelly,* 989 F.2d 162, 164 (4th Cir.), *cert. denied,* —— U.S. ——, 114 S.Ct. 158, 126 L.Ed.2d 119 (1993). In addition, the sentencing guidelines apply to convictions for state crimes assimilated pursuant to § 13. 18 U.S.C.A. § 3551(a) (West Supp.1995); *Harris,* 27 F.3d at 115; U.S.S.G. § 2X5.1, comment. (backg'd.). For example, state law may provide the mandatory maximum or minimum sentence, but the federal sentencing guidelines determine the sentence within these limits. *Harris,* 27 F.3d at 115.

 Most importantly, while a federal court acting pursuant to the ACA is restricted by state law, it will not assimilate a state sentencing provision that conflicts with federal sentencing policy. *See Kelly,* 989 F.2d at 164. "[A] federal prisoner, though convicted and sentenced in accordance with § 13, should be subject to federal correctional policies." *Harris,* 27 F.3d at 115. For example, courts have "declined to assimilate state law provisions requiring minimum periods of incarceration before parole, on the ground that such required periods of confinement conflicted with federal policy." *Kelly,* 989 F.2d at 164. And, this court has recognized that the ACA does not require adherence to state parole eligibility. *Harris,* 27 F.3d at 115.

Accordingly, when state law provisions conflict with federal policy, federal policy controls. *See Kelly,* 989 F.2d at 164.

### III.

Keeping the above principles in mind, we now turn to address Pierce's arguments.

### A.

■ Pierce first contends that a federal court does not have the authority to impose a term of supervised release, because supervised release is not an available sentencing alternative under North Carolina law. Thus, he asserts, he was not subjected to "like punishment" as required by the ACA.

■ Although the sentencing guidelines governing probation and supervised release do not apply to Pierce's specific offense,[1] a federal court possesses the statutory authority to impose a term of supervised release upon a misdemeanor defendant as long as the term of supervised release does not exceed one year. *See* 18 U.S.C.A. § 3583(a), (b)(3) (West Supp.1995). The issue before us, therefore, is whether the fact that Pierce was sentenced under the ACA mandates a different result. Because the ACA requires only that the defendant be subject to similar punishment, whether supervised release is a "like punishment"—and thus appropriate in the context of an ACA conviction—depends upon whether a similar punishment is available under North Carolina law.

■ Supervised release was not specifically available as a sentencing alternative under North Carolina law in effect at the time Pierce committed the offense. State law, however, provided for parole eligibility at any time upon being incarcerated unless the sentence required a mandatory minimum term of imprisonment. N.C.Gen.Stat. § 15A–1371 (1988). Parole is a method of reintegrating offenders who are deemed

good social risks into society while maintaining the guidance and control of the state. *Jernigan v. State,* 10 N.C.App. 562, 179 S.E.2d 788, 790, *aff'd,* 279 N.C. 556, 184 S.E.2d 259 (1971). Similarly, supervised release is designed "to ease the defendant's transition into the community after the service of a long prison term ... or to provide rehabilitation to a defendant who has spent a fairly short period in prison ... but still needs supervision ... after release." S.Rep. No. 225, 98th Cong., 2d Sess. 124 (1983), *reprinted in* 1984 U.S.C.C.A.N. 3182, 3307. Parole and supervised release, then, both occur following a term of imprisonment, involve government supervision, and serve to facilitate a prisoner's transition into society. *United States v. Marmolejo,* 915 F.2d 981, 985 (5th Cir.1990). The similarities of these two alternatives to incarceration convince us that a term of supervised release is "like" parole for the purposes of the ACA. *See id.; cf. United States v. Reyes,* 48 F.3d 435, 437–39 (9th Cir.1995) (holding supervised release is similar to probation and thus "like punishment" for purposes of the ACA). Consequently, Pierce's sentence of incarceration plus a term of supervised release did not violate the ACA's requirement that he be subject to "like punishment."

### B.

■ Pierce next argues that—assuming supervised release is authorized under federal law as a component of his ACA sentence—the supervised release term imposed upon him is invalid, because the total sentence exceeded the maximum term of imprisonment authorized by North Carolina law for the underlying offense. Pierce contends that if he had been sentenced in state court, the maximum punishment he could have received for impaired driving, after his probation was revoked, was a 60-day term of imprisonment. *See* N.C.Gen.Stat. § 20–179(k) (1993).[2]

---

**1.** Impaired driving—as defined by N.C.Gen.Stat. § 20–138.1—is a Class B misdemeanor to which the guidelines do not apply. *Harris,* 27 F.3d at 116; *see also* U.S.S.G. § 1B1.9. Pierce is also exempt from Chapter 7 provisions regarding probation revocation. *See* U.S.S.G. Ch. 7, Pt. B, intro. comment. In sentencing a misdemeanor defendant, however, a federal court must still

take into account the other factors listed under 18 U.S.C.A. § 3553(a), and, in the case of an ACA defendant, the restrictions imposed by state law. *See Harris,* 27 F.3d at 116.

**2.** North Carolina has a five-tiered sentencing structure for those convicted of impaired driving. *See* N.C.Gen.Stat. § 20–179 (1993). There is no

Thus, he maintains, he could not have received a sentence of the length imposed, and accordingly his specific sentence is invalid. Because we conclude that limiting the total sentence that may be imposed—the term of incarceration plus supervised release—to the maximum term of imprisonment permitted by state law would conflict with federal sentencing policy, we disagree.

 In the context of sentences imposed upon federal defendants convicted of violating federal criminal statutes, supervised release is not considered to be a part of the incarceration portion of a sentence and therefore is not limited by the statutory maximum term of incarceration. *See, e.g., United States v. Jamison,* 934 F.2d 371, 373–75 (D.C.Cir.1991). Rather, "supervised release is to be imposed in addition to any incarceration authorized by a particular substantive criminal statute" because Congress has indicated that " 'the question whether the defendant will be supervised following his term of imprisonment is dependent on whether the judge concludes that he needs supervision.' " *United States v. Montenegro–Rojo,* 908 F.2d 425, 432–33 (9th Cir.1990) (quoting S.Rep. No. 225, 98th Cong., 2d Sess. 123 (1983), *reprinted in* 1984 U.S.C.C.A.N. 3182, 3306). Thus, if Pierce had been convicted of a specifically defined federal crime, the district court properly could have imposed a term of supervised release in excess of the maximum term of incarceration available for the criminal offense. We must decide, then, whether the ACA requires a different rule for defendants sentenced pursuant to an assimilated state statute.

As previously noted, a federal court will not adopt provisions of state law that conflict with federal sentencing policy. If limited to the maximum term of imprisonment permitted by the state, a district court would be unable to impose an appropriate term of supervised release upon individuals it determined to be in need of postincarceration supervision, even though the crime was committed within an area of federal jurisdiction. Since under federal policy supervised release is considered distinct from incarceration and

dispute that Pierce was subject to a Level Five

available in addition to any term of imprisonment, adopting Pierce's argument would create an ACA sentencing rule that conflicts with federal sentencing policy regarding the imposition of supervised release. We refuse to sanction such an exception for ACA defendants. Consequently, we hold that under the ACA, the total sentence—a term of incarceration followed by supervised release—properly may exceed the maximum term of incarceration provided for by state law.

## IV.

For the above reasons, we conclude that the sentence imposed by the magistrate judge did not violate the ACA.

*AFFIRMED.*