**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

No. 06-5195

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

versus

JOSIAH CHARLES MCMANUS,

Defendant - Appellant.

Appeal from the United States District Court for the Western District of North Carolina, at Asheville. Lacy H. Thornburg, District Judge. (1:06-cr-00024)

Argued: May 25, 2007                    Decided: June 4, 2007

Before TRAXLER and KING, Circuit Judges, and T. S. ELLIS, III, Senior United States District Judge for the Eastern District of Virginia, sitting by designation.

Reversed and remanded by unpublished per curiam opinion. Senior Judge Ellis wrote a concurring opinion.

**ARGUED:** David Grant Belser, BELSER & PARKE, Asheville, North Carolina, for Appellant. Donald David Gast, Assistant United States Attorney, OFFICE OF THE UNITED STATES ATTORNEY, Asheville, North Carolina, for Appellee. **ON BRIEF:** Gretchen C. F. Shappert, United States Attorney, Charlotte, North Carolina, for Appellee.

Unpublished opinions are not binding precedent in this circuit.

PER CURIAM:

Josiah McManus was charged under the Assimilative Crimes Act ("ACA"), see 18 U.S.C.A. § 13 (West 2000), with speeding to elude arrest while driving on the Blue Ridge Parkway near Asheville. He pleaded guilty and was sentenced to 15 months imprisonment. McManus appeals, challenging the length of his sentence.

"The ACA provides that in the absence of a governing federal statute, a person who commits a state crime on a federal enclave 'shall be guilty of a like offense and subject to a like punishment.'" United States v. Pierce, 75 F.3d 173, 176 (4th Cir. 1996) (quoting 18 U.S.C.A. § 13(a)). Accordingly, a defendant prosecuted under the ACA "may be sentenced only in the way and to the extent that the person could have been sentenced in state court. For instance, a term of imprisonment imposed for an assimilated crime may not exceed the maximum term established by state law." Id. (citations and internal quotation marks omitted).

We agree with McManus that for purposes of this case, the state maximum sentence was the maximum sentence that could have been imposed on him by a state-court judge. Under North Carolina's structured sentencing scheme, a defendant with McManus's criminal history could have been sentenced to a maximum of 10 months. See N.C. Gen. Stat. § 15A-1340.17(d) (2005). The government, however, contends that the state statutory maximum for purposes of the ACA is 30 months, not 10 months, because the relevant North Carolina

2

statute permits a 30-month sentence for a defendant in the highest criminal history category. We disagree. Even if Blakely's[1] Sixth Amendment requirements were satisfied, a North Carolina sentencing court would have no discretion to sentence a defendant with McManus's criminal history score to anything above the aggravated maximum sentence of 10 months. See N.C. Gen. Stat. § 15A-1340.13(e) (2005) ("The court may deviate from the presumptive range of minimum sentences of imprisonment specified for a class of offense and prior record level if it finds . . . that aggravating or mitigating circumstances support such a deviation. The amount of the deviation is in the court's discretion, subject to the limits specified in the class of offense and **prior record level** for mitigated and aggravated punishment." (emphasis added)). Because 10 months is the maximum that McManus could have received under state law, we believe 10 months is the maximum state sentence for purposes of sentencing under the ACA. See Pierce, 75 F.3d at 176 (explaining that a defendant prosecuted under the ACA "may be sentenced only in the way and to the extent that the person could have been sentenced in state court" (emphasis added and internal quotation marks omitted)).

We recognize, of course, that federal courts are not required to assimilate "every incident of a state's sentencing policy," United States v. Harris, 27 F.3d 111, 115 (4th Cir. 1994), and that

---

[1]Blakely v. Washington, 542 U.S. 296 (2004).

state sentencing provisions that conflict with federal sentencing policy will not be assimilated, see Pierce, 75 F.3d at 176. Contrary to the government's suggestion, however, we cannot conclude that North Carolina's method for calculating criminal history points conflicts with federal sentencing policy simply because McManus would have received a higher criminal history score under the federal guidelines. Both the federal and state schemes recognize that repeat offenders should receive more severe sentences; that the federal and state schemes calculate the scores differently does not mean that the state scheme conflicts with a federal sentencing policy.

Under North Carolina's sentencing scheme, the maximum sentence in any given case is dependent upon the existence of any aggravating or mitigating factors and the defendant's criminal history score. If we are not required to assimilate those portions of the North Carolina scheme, then federal courts could impose sentences that could not be imposed in state court. The ACA does not require a federal sentence to be identical to the sentence that would be imposed under state law, but it must be similar. See Pierce, 75 F.3d at 176. We cannot conclude that a sentence that would be illegal under state law is nonetheless a "like sentence" within the meaning of the ACA. See United States v. Young, 916 F.2d 147, 150 (4th Cir. 1990) (explaining that "the 'like punishment' requirement of the [ACA] mandates that federal court

4

sentences for assimilated crimes must fall within the minimum and maximum terms established by state law, and <u>that within this range of discretion</u> federal judges should apply the Sentencing Guidelines to the extent possible" (emphasis added)); <u>United States v. Garcia</u>, 893 F.2d 250, 254 (10th Cir. 1989) ("[T]he [ACA] requires courts to impose sentences for assimilative crimes that fall within the maximum and minimum terms established by state law. However, <u>within the range of discretion permitted to a state judge</u>, a federal judge should apply the federal sentencing guidelines to the extent possible." (emphasis added)).

Accordingly, we conclude that the maximum sentence under North Carolina law was 10 months. Because the sentence imposed by the district court exceeded the maximum sentence available under state law, we reverse McManus's sentence and remand for re-sentencing consistent with this opinion.[2]

<u>REVERSED AND REMANDED</u>

---

[2]We reject the government's contention that this issue was not raised below and must therefore be reviewed for plain error only. The PSR calculated McManus's sentence under the North Carolina Structured Sentencing Act, counsel for McManus argued for a sentence within the presumptive range of the Structured Sentencing Act, and counsel for the government argued that the court was bound only by the maximum sentence (30 months) that could be imposed on any defendant under North Carolina law. We believe this is sufficient to preserve the issue of what the maximum sentence is under North Carolina law and thus the maximum to which McManus could be sentenced under the ACA.

ELLIS, Senior District Judge, concurring:

I am pleased to concur in the result reached in the per curiam opinion, but I nonetheless consider it necessary to write separately to underscore the narrow range of circumstances in which this holding would govern.

Analysis must begin with the settled principle, acknowledged in the per curiam opinion, that "the term 'like punishment,' as used in the ACA, requires only that the punishment be similar, not identical." United States v. Pierce, 75 F.3d 173, 176 (4th Cir. 1996). Moreover, "[t]he phrase 'like punishment,' does not encompass every incident of a state's sentencing policy." United States v. Harris, 27 F.3d 111, 115 (4th Cir. 1994). Thus, federal courts acting pursuant to the ACA are not bound by state rules of evidence or state law regarding parole, probation, good time credits, or special assessments. United States v. Slatkin, 984 F. Supp. 916, 918 (D. Md. 1995); see e.g., Kay v. United States, 255 F.2d 476 (4th Cir. 1958); Harris, 27 F.3d 111. This is so because "the Sentencing Guidelines apply to convictions under § 13 [the ACA]." Harris, 27 F.3d at 115. Therefore, to give proper effect to federal sentencing policies and to satisfy the "like punishment" requirement of the ACA, we have held that a federal court imposing an ACA sentence must adhere to the state's statutorily prescribed minimum and maximum sentence, but within this range, the court must apply the Guidelines. United States v. Young, 916 F.2d 147, 150

6

(4th Cir. 1990). This means that "[t]he court is required to determine if there is a sufficiently analogous offense guideline, and, if so, to apply the guideline that is most analogous." U.S.S.G. Manual § 2X5.1 comment. On the other hand, where "there is no sufficiently analogous guideline, the provisions of 18 U.S.C. § 3553 control." Id., see Harris, 27 F.3d at 115. Significantly, in applying the Guidelines to determine the appropriate sentence within the state's statutorily prescribed range, a federal court "will not assimilate a state sentencing provision that conflicts with federal sentencing policy." Pierce, 75 F.3d at 176. Put simply, "when state law provisions conflict with federal policy, federal policy controls." Id.[1]

It follows from these well-settled principles that where a district court, acting pursuant to the ACA, finds that there is a sufficiently analogous offense guideline, which is higher than the

_____

[1]Such conflicts arise where, as here, the state's criminal history calculation differs markedly from that of the Guidelines. For example, in this case, under the North Carolina Structured Sentencing Act, defendant had zero criminal history points, and thus, was within criminal history category I, while under the Guidelines defendant's prior criminal offenses amounted to 4 criminal history points, placing him in criminal history category III. This significant disparity reflects the difference between federal sentencing policies and state sentencing policies, and underscores the importance of not assimilating state sentencing guidelines in toto because of the potential for conflict with federal sentencing policies. See United States v. Clark, 361 F. Supp. 2d 502, 508 (E.D. Va. 2005) (holding that "statutes expressing [state] sentencing policies do not override the clearly expressed federal policies contained in the United States Sentencing Guidelines").

state sentencing guidelines' presumptive sentence, and thus in conflict with the state's presumptive sentence, the federal Guidelines control and the federal court may impose a sentence within the state statutory maximum for the offense charged, but higher than the state sentencing guidelines' presumptive sentence. See Pierce, 75 F.3d 173.[2] For example, in this case had the district court applied the Guidelines and found that an analogous offense guideline advised a sentence of 10 to 15 months, the court would not have been bound by the 10 month maximum required by the state's sentencing guidelines. On the other hand, where, as here, no sufficiently analogous offense guideline applies, it is appropriate for a federal court, acting pursuant to the ACA, to follow the state's guidelines range.

---

[2]See also United States v. Coleman, 38 F.3d 856 (7th Cir. 1994) (rejecting appellant's claim that state characterization of "crime of violence" should govern in an ACA case, rather than the Guidelines' definition, because "the defendant was convicted of a federal crime for which the Guidelines govern sentencing"); United States v. Garcia, 893 F.2d 250 (10th Cir. 1989) (affirmed a sentence that fell within the state's maximum term and was imposed using a Guidelines calculation, rather than the state's sentencing guidelines); United States v. Norquay, 905 F.2d 1157 (8th Cir. 1990) (construing Major Crimes Act ("MCA"), 18 U.S.C. § 1153, which, like the ACA, assimilates state criminal law and requires federal courts to impose "the same law and penalties," to require that the Guidelines, and not state sentencing guidelines, apply to determine the appropriate sentence within the state's statutorily prescribed range); United States v. Pluff, 2001 U.S. App. LEXIS 18272 (9th Cir. 2001) (overturning prior precedent in MCA case that held that "state sentencing schemes, rather than the federal sentencing guidelines, apply in [MCA] prosecutions for crimes that must be 'defined and punished' according to state law").

In sum, where, as is not here the case, an applicable federal Guidelines range conflicts with the state sentencing guidelines range, I would conclude that the Guidelines, including its criminal history calculation, would trump the state's sentencing guidelines.