**UNITED STATES of America,
Plaintiff-Appellee,**

**v.**

**Bryceson PINTO, Defendant-Appellant.**

No. 83–2640.

United States Court of Appeals,
Tenth Circuit.

Feb. 19, 1985.

Richard Smith, Asst. U.S. Atty., Albuquerque, N.M. (William L. Lutz, U.S. Atty. and Presiliano A. Torrez, Asst. U.S. Atty. Albuquerque, N.M., with him on the brief) for plaintiff-appellee.

Edwin Macy, Asst. Federal Public Defender, Albuquerque, N.M., for defendant-appellant.

Before HOLLOWAY, Chief Judge, and BREITENSTEIN and SEYMOUR, Circuit Judges.

BREITENSTEIN, Circuit Judge.

Appellant-defendant, Pinto, was charged in a two-count indictment. The first count charged burglary and aggravated burglary in violation of 18 U.S.C. § 13 and N.M.Stat. Ann. §§ 30–16–3(A) and 30–16–4(C) (1978 Comp.). The second count charged rape in violation of 18 U.S.C. §§ 1153 and 2031. Defendant was convicted after a jury trial of aggravated burglary and the lesser included offense of assault with intent to rape. He was sentenced under Count I to imprisonment for seven years with a mandatory parole term of two years. On the second count he was sentenced to imprisonment for seven years to run concurrently with the sentence imposed on Count I. He appeals. We affirm except as to the mandatory parole provision of the sentence.

Defendant is an enrolled member of the Zuni Tribe. The events all occurred on the Zuni Indian Reservation. The breaking, entering, and assault occurred on May 10 or 11, 1983. Defendant had been drinking heavily. He entered the home of Susan Morris by breaking the night lock on a rear door. Morris is a registered nurse and an employee of the Indian Health Service. Her home is located just west of the Public Health Service hospital and is completely surrounded by two fences. She went to bed at approximately 11:00 p.m. and said she immediately fell asleep. She was awakened by a noise and the feeling of the presence of someone watching her. She saw a male figure at the end of her bed with his hand raised with an instrument in his hand with which he struck her.

The evidence is conflicting as to what happened next. She testified that he sexually assaulted her. He testified that he was too drunk to do the act. They talked for an hour or an hour and a half. She went to the bathroom twice. Finally, when she thought that he was asleep, she left the house and went next door and called the police. When they came, at 3:00 a.m. on May 11, 1983, they found the defendant on her bed clad only in his shorts. Defendant was arrested and given the *Miranda* warnings.

Defendant argues that the trial court improperly excluded evidence that it was defendant's habit to wander into wrong houses when intoxicated. Defendant testified that he wandered into other peoples' homes while intoxicated about 15–20 times. The trial court allowed this evidence but refused to permit defendant to go into detail. Tr. 652–3. Defendant did not object to the trial court's ruling. Defendant's ex-wife testified that (1) in 1975 following heavy drinking he entered an exhibit home which was vacant to sleep; (2) in 1979 after drinking heavily he entered a clothing store and attempted to sleep before being evicted; and (3) he entered her home twice uninvited and slept. Other excluded testimony related to instances where the defendant acted disoriented while intoxicated, Tr. 530, 532, 570, and passed out in bars,

Tr. 531, neither of which could possibly support the assertion that it was his habit to wander into the wrong building while intoxicated. The trial court ruled that this testimony of the ex-wife was insufficient to establish habit.

Fed.R.Evid. 406 reads:

"Evidence of the habit of a person or of the routine practice of an organization, whether corroborated or not and regardless of the presence of eyewitnesses, is relevant to prove that the conduct of the person or organization on a particular occasion was in conformity with the habit or routine practice."

The Advisory Committee on Proposed Rules has said, 28 U.S.C. at p. 692: "[H]abit ... is the person's regular practice of meeting a particular kind of situation with a specific type of conduct...." The Committee further said:

"While adequacy of sampling and uniformity of response are key factors, precise standards for measuring their sufficiency for evidence purposes cannot be formulated."

■ So far as the defendant's testimony is concerned, the court received it and no objection was raised nor was any attack made on the instructions. So far as the ex-wife's testimony goes, the relevancy of evidence and its admission is within the sound discretion of the trial court and the court's ruling will not be disturbed absent an abuse of discretion. *United States v. Ray*, 10 Cir., 488 F.2d 15, 18. Four instances of conduct while intoxicated over a period of eight years during which time defendant, by his own assertion, was frequently drunk is insufficient to establish habit. See *Reyes v. Missouri Pacific Railroad Company*, 5 Cir., 589 F.2d 791, 795, holding that four convictions over a three and one-half year period for public intoxication is of insufficient regularity to rise to the level of habit evidence. The trial court did not err in its treatment of the habit evidence.

Defendant argues that he was denied a fair trial because Susan Morris refused to talk to defendant's investigator. Peso Chavez, an investigator for the defendant, went to the home of Susan Morris to talk to her about the case. Morris said that the United States Attorney's Office said that she had the right to speak or not to speak with anyone from the defense. Morris further said that she did not wish to speak to Chavez about the incident. R. 13. She made a telephone call to the United States Attorney's Office and talked to a secretary. Chavez in his affidavit said that the secretary told her not to say a word. On the stand Morris testified that she could not remember what the secretary told her. Tr. 21–22. The defense then moved to take the deposition of Susan Morris. The motion was denied. Tr. 17, 27. The defense did not object to the denial of its motion.

■ A witness in a criminal case has the right to refuse to be interviewed. *United States v. Fischel*, 5 Cir., 686 F.2d 1082, 1092; *Byrnes v. United States*, 9 Cir., 327 F.2d 825, 832, cert. denied 377 U.S. 970, 84 S.Ct. 1652, 12 L.Ed.2d 739. "No right of a defendant is violated when a potential witness freely choses not to talk...." *Kines v. Butterworth*, 1 Cir., 669 F.2d 6, 9, cert. denied 456 U.S. 980, 102 S.Ct. 2250, 72 L.Ed.2d 856. However, the prosecution may not interfere with the free choice of a witness to speak with the defense absent justification "by the clearest and most compelling considerations." Id. In the case at bar the prosecution did not impermissibly interfere with Morris' choice. *United States v. Bittner*, 8 Cir., 728 F.2d 1038, 1041–1042.

The defense argues that the court erred in not granting defendant's motion for a mistrial. Defendant introduced evidence through the witness Craig, a laboratory analyst for the New Mexico State Police, that the only foreign hair found on defendant was animal hair. Tr. 461–462. On cross-examination, the following exchange took place between the prosecutor and the defendant, Tr. 691–692:

"Q.: And I suppose you don't know how the hair, animal hair, got on your pants?

A.: No.

Q.: And you don't recognize how the dissimilar pubic hair got on your shorts? You don't know how that happened?

A.: No, I don't know how that happened.

Q.: In the 14 or 15 times that you have broken into peoples' homes, this is the first time that you have ever attacked anyone, isn't it?

Defense Counsel: I object. There has been no testimony that he broke into homes 15 times.

THE COURT: The testimony is 15 to 20 times of being in other people's houses.

Defense Counsel: Yes, sir. Not breaking into other people's houses.

THE COURT: Sustained."

Counsel for defendant did not object to the prosecutor's question concerning dissimilar pubic hair being found on defendant's shorts until later in the trial when he moved for a mistrial which the court denied. Tr. 693–694. Thereafter, on redirect examination, defendant's counsel corrected the misstatement. Tr. 694–695.

*United States v. Harris,* 7 Cir., 542 F.2d 1283, 1307, cert. denied 430 U.S. 934, 97 S.Ct. 1558, 51 L.Ed.2d 779, holds that: "It is improper conduct to ask a question which implies a factual predicate which the examiner knows he cannot support by evidence or for which he has no reason to believe that there is a foundation of truth."

■ A trial court has broad discretion whether a mistrial is warranted when an improper question is asked by the government. *United States v. Clinton,* 8 Cir., 711 F.2d 115, 117. An appellate court will overturn the trial court's determination only where there has been an abuse of discretion. *United States v. Davis,* 5 Cir., 546 F.2d 583, 593, cert. denied 431 U.S. 906, 97 S.Ct. 1701, 52 L.Ed.2d 391. In reviewing the trial court's determination, the impact of the improper question must be considered in the context of the entire trial. *United States v. Bosby,* 11 Cir., 675 F.2d 1174, 1185. In *United States v. James,* 10 Cir., 728 F.2d 465, 468, cert. denied — U.S. ——, 105 S.Ct. 106, 83 L.Ed.2d 50, we said quoting *Marks v. United States,* 10 Cir.,

260 F.2d 377, 383, cert. denied 358 U.S. 929, 79 S.Ct. 315, 3 L.Ed.2d 302. "It is not all misconduct or improper argument that will require granting a new trial or a reversal on appeal. It is only when such conduct can present a question whether there is reason to believe that it influenced the jury's verdict that the failure to take appropriate steps to remove it will warrant a reversal."

■ The prosecutor asked the misleading question only once. It was whether "dissimilar" pubic hair was on defendant's shorts. The defendant did not object contemporaneously. He later in the trial used the question as grounds for mistrial. After that was denied on redirect examination of the defendant, he corrected the statement. This is unlike the situation in *Berger v. United States,* 295 U.S. 78, 88, 55 S.Ct. 629, 633, 79 L.Ed. 1314, where the government attorney engaged in numerous and pronounced instances of improper conduct.

Viewing the trial in its entirety, we conclude that the prejudicial impact of the government's improper statement was slight, especially in the lack of a contemporaneous objection and the actions of the defense counsel in correcting the misstatement. The trial court did not abuse its discretion. The error did not affect the defendant's substantial rights. Rule 52(a) Fed.R.Crim.P.

Defendant was convicted under Count I of the indictment which charged aggravated burglary in violation of N.M.Stat.Ann. § 30–16–4(C) and sentenced to seven years imprisonment and ordered to serve a mandatory parole term as required by N.M. Stat.Ann. § 31–21–10(C). On Count II he was sentenced to seven years imprisonment to run concurrently with the sentence imposed on Count I. Defendant argues that the two-year mandatory parole term may not be imposed by a federal court sentencing a defendant under the Assimilative Crimes Act.

Section 13, 18 U.S.C. provides:

"Whoever within or upon any [Federal Enclave] is guilty of any act or omission

which, although not made punishable by any enactment of Congress, would be punishable if committed or omitted within in the jurisdiction of the State, Territory, Possession, or District in which such place is situated, by the laws thereof in force at the time of such act or omission, shall be guilty of a like offense and subject to a like punishment."

 One of the purposes of § 13 is, absent pre-emption by federal law, to make applicable to a federal enclave the criminal law of the state in which the federal enclave is located. *United States v. Sharpnack*, 355 U.S. 286, 292–293, 78 S.Ct. 291, 295–296, 2 L.Ed.2d 282. Section 13 is applicable to Indian Reservations. *Williams v. United States*, 327 U.S. 711, 713, 66 S.Ct. 778, 779, 90 L.Ed. 962.

 The district court must under § 13 sentence the defendant to a term of years in accordance with the state statutes. The question is whether the federal court must in addition require defendant to undergo the two-year mandatory parole imposed by N.M.Stat.Ann. § 31–21–10(C). The two circuits which have considered the question have held that the Assimilative Crimes Act does not require a federal court to follow state law concerning parole terms.

In *United States v. Smith*, 9 Cir., 574 F.2d 988, 992, cert. denied 439 U.S. 852, 99 S.Ct. 158, 58 L.Ed.2d 156, the court said:

"Once the court has applied state law to determine the applicable term of years for the sentence, the Assimilative Crimes Act does not further require adherence to state policy with reference to parole eligibility."

In *United States v. Vaughan*, 2 Cir., 682 F.2d 290, 294, cert. denied 459 U.S. 946, 103 S.Ct. 261, 74 L.Ed.2d 203, the court said: "Since the appellant is a federal prisoner confined in a federal correctional facility, federal correctional policies should govern the conditions for his release on parole. To hold otherwise would impose a set of restrictions on Assimilative Crimes Act prisoners different from the rules affecting all other federal prisoners.

Clearly, the correctional administration of federal prisons would be left in disarray if state policies concerning parole, such as good time credits, were enforced under the Act. (Citing a case.) We do not think that Congress could have intended to create such differences in treatment."

 We agree with those decisions. The judgment of conviction is affirmed except that we vacate that part of the sentence imposed on Count I which imposes a two-year mandatory parole in accordance with the New Mexico statute.