**UNITED STATES of America, Plaintiff,**

**v.**

**Donald L. PECK, Defendant.**

**No. 91–CR–79W.**

United States District Court,
D. Utah, C.D.

April 9, 1991.

James D. Gilson, Asst. U.S. Atty., Salt Lake City, Utah, for plaintiff.

Kristine K. Smith, Salt Lake City, Utah, for defendant.

## MEMORANDUM DECISION AND ORDER REVERSING THE JUDGMENT OF THE MAGISTRATE

WINDER, District Judge.

This matter is before the court on defendant's appeal of the Judgment of the magistrate revoking defendant's probation and sentencing him to thirty days in the Federal Halfway House. A hearing on the appeal was held April 3, 1991. Defendant was represented by Kristine K. Smith. The government was represented by James D. Gilson. Before the hearing, the court considered carefully the memoranda and other materials submitted by the parties. Since taking the matter under advisement, the court has further considered the law and facts relating to this appeal. Now being fully advised, the court renders the following memorandum decision and order.

## BACKGROUND

On November 30, 1988, defendant pleaded guilty to operating a vehicle on a suspended license in violation of Utah Code § 41–2–136 (1988) as assimilated and made

applicable on United States government reservations by 18 U.S.C. § 13.[1] By Judgment dated January 31, 1989, the magistrate placed defendant on two years probation, assessed a $250 fine and a $25 special assessment and ordered defendant to perform forty hours of community service. Among the conditions of probation were that defendant not violate any federal, state or local laws and that he not operate a motor vehicle with a suspended license.

On December 19, 1990, the United States Probation Office filed a Petition for Probation Action against defendant, alleging three separate probation violations during 1990. The first violation is alleged to have occurred March 31, 1990; the second, September 18, 1990 with a conviction on September 27, 1990; and the third on December 16, 1990. Thereafter, defendant moved to terminate the probation revocation proceedings on grounds that the alleged violations occurred after termination of the maximum term of probation to which defendant could have been sentenced, and thus the magistrate lacked subject matter jurisdiction over the defendant.

On March 11, 1991, the magistrate entered his Memorandum Decision and Order denying defendant's motion to terminate probation revocation proceedings. On March 27, 1991, the defendant appeared before the magistrate and, reserving the right to appeal the Memorandum Decision and Order, acknowledged his violation of the terms of probation and consented to sentencing. The magistrate then revoked defendant's probation and sentenced him to thirty days at the Federal Halfway House in Salt Lake City, Utah. Defendant was ordered to surrender himself at the Halfway House on April 12, 1991.

## STANDARD OF REVIEW

█ Rule 7(e) of the Rules of Procedure for the Trial of Misdemeanors Before the United States Magistrates states that the "scope of appeal shall be the same as on an appeal from a judgment of a district court to a court of appeals." Here, the primary question is whether the magistrate incorrectly applied the law by sentencing the defendant to a two-year term of probation for violation of the underlying offense of driving on a suspended license. A trial court's factual findings relating to imposition of sentence are reviewed under the clearly erroneous standard, *United States v. Harris*, 903 F.2d 770, 778 (10th Cir.1990), while questions of law are reviewed *de novo*. *United States v. Rutter*, 897 F.2d 1558, 1560 (10th Cir.), *cert. denied*, — U.S. —, 111 S.Ct. 88, 112 L.Ed.2d 60 (1990).

## DISCUSSION

█ The Assimilated Crimes Act ("ACA") authorizes federal courts to exercise jurisdiction over violations of state law that occur in special maritime or territorial jurisdictions of the United States if such violations are not proscribed by federal statute. 18 U.S.C. § 13(a) (Supp.1991).[2] Under the ACA, not only are the state offense and its elements incorporated into federal law, but the punishment prescribed

---

**1.** The record reveals a discrepancy about where the violation occurred. Defendant states the offense occurred on Hill Air Force Base, *see* Defendant's Motion to Terminate Probation Revocation Proceedings Based on Lack of Jurisdiction (Feb. 8, 1991) at 3–4, while the government states it occurred within the Fort Douglas military reserve. *See* Memorandum in Opposition to Defendant's Motion to Terminate Probation Revocation Proceedings (Feb. 20, 1991) at 2. Unfortunately, a photocopy of the Violation Notice, attached as Exhibit "A" to the government's memorandum, is illegible. Nevertheless, both the government and defendant agree the violation occurred within the special maritime and territorial jurisdiction of the United States, and thus the Assimilated Crimes Act, 18 U.S.C. § 13, is applicable.

**2.** The Assimilated Crimes Act provides as follows:

Whoever within or upon any of the places now existing or hereafter reserved or acquired as provided in section 7 of this title, is guilty of any act or omission which, although not made punishable by any enactment of Congress, would be punishable if committed or omitted within the jurisdiction of the State, Territory, Possession, or District in which such place is situated, by the laws thereof in force at the time of such act or omission, shall be guilty of a like offense and subject to a like punishment.

18 U.S.C. § 13(a) (Supp.1991).

by state law also is assimilated. This is made clear by the express language of the statute, which states defendant "shall be guilty of a like offense and subject to a like punishment." *Id.*

This language consistently has been construed to require punishment "only in the way and to the extent that it would have been punishable if the territory embraced by the reservation remained subject to the jurisdiction of the state." *United States v. Press Publishing Co.*, 219 U.S. 1, 10, 31 S.Ct. 212, 214, 55 L.Ed. 65 (1911) (construing statutory precursor to 18 U.S.C. § 13); *United States v. Garcia*, 893 F.2d 250, 253 (10th Cir.1989), *cert. denied,* — U.S. —, 110 S.Ct. 1792, 108 L.Ed.2d 793 (1990). Although federal judges are not required to duplicate "every last nuance of the sentence that would be imposed in state court," the sentence imposed must fall within the maximum and minimum terms permitted under state law. *Garcia*, 893 F.2d at 254.

■ In this case, the ACA was used to assimilate Utah Code Ann. § 41–2–136 (1988), which prohibits a person whose license has been suspended or revoked from operating a motor vehicle. Defendant was convicted of a Class B misdemeanor under the statute.[3] Under Utah law at the time of the offense, Class B misdemeanors were punishable by a maximum of six months in prison, Utah Code Ann. § 76–3–204 (1990), and a $1,000 fine, Utah Code Ann. § 76–3–301(1)(d) (1990). Of particular importance to this case, Utah law also provided that any period of probation imposed on a defendant convicted of a Class B misdemeanor automatically terminated after six months. Utah Code Ann. § 77–18–1(7)(a) (1988) (amended 1989).[4]

Therefore, at both the time of the offense and sentencing in this case, the maximum probationary period to which defendant could have been sentenced in state court was six months. Because the ACA provides for a "like punishment," defendant contends six months is the maximum period of probation to which the magistrate could have sentenced him. Thus, because the probation violations which resulted in the revocation of defendant's probation occurred well beyond this six-month period, defendant contends the magistrate lacked subject matter jurisdiction and therefore had no power to revoke his probation and sentence him to the Federal Halfway House. *See* 18 U.S.C. § 3565(c) (warrant or summons must issue prior to expiration of probationary period for court to have power to revoke probation).

The government argues that probation is not "punishment" within the meaning of the ACA, and therefore federal courts are not bound by state probation statutes. Furthermore, the government contends, state probation rules are preempted by federal law, which authorizes a maximum probation term of five years for a misdemeanor offense. 18 U.S.C. § 3561(b)(2). The court disagrees. A reading of the plain language of the ACA and the pertinent case law convinces the court that an ACA defendant may not be sentenced to two years probation when the maximum term of probation authorized by state law is six months.

The case law interpreting "punishment" within the meaning of the ACA supports the conclusion that probation—specifically, the maximum length of that probation—is included within the meaning of the term.

---

**3.** Utah Code § 41–2–136 (1988) defined the offense as either a Class A misdemeanor if the suspension or revocation was the result of certain traffic violations or a Class B misdemeanor if the suspension was not the result of the enumerated violations. Utah Code § 41–2–136(2)–(3) (1988). Although it is not entirely clear from the record, the magistrate apparently treated defendant's violation as a Class B misdemeanor. The parties do not dispute this categorization of the offense.

**4.** Utah Code § 77–18–1(7)(a) (1988), provided as follows: "Upon completion without violation of 18 months' probation in felony or class A misdemeanor cases, or six months in class B misdemeanor cases, the probation period *shall be terminated,* unless earlier terminated by the court." Utah Code § 77–18–1(7)(a) (1988) (amended 1989) (emphasis added). The 1989 amendments to the statute lengthened the probation period for Class B misdemeanors to 12 months. *See* Utah Code Ann. § 77–18–1(7)(a) (Supp.1990).

In *United States v. Mayberry*, 774 F.2d 1018 (10th Cir.1985) (holding abrogated by 18 U.S.C. 3013(d) (Supp.1990)), the Tenth Circuit Court of Appeals considered whether a $50 special assessment levied against defendant pursuant to 18 U.S.C. 3013 was "punishment" within the meaning of 18 U.S.C. § 13. In concluding that the assessment was indeed punishment, the Tenth Circuit stated that "punishment" should be given a broad and inclusive meaning. *Mayberry*, 774 F.2d at 1020–21. The *Mayberry* court noted that although monetary in nature, the special assessment placed an additional burden or penalty on defendant and that it could be imposed only following conviction of a crime or offense against the United States. *Id.* at 1021.

Similarly, probation may be imposed only upon conviction of an offense and subjects a defendant to a wide range of additional burdens in the form of mandatory and discretionary conditions. *See* 18 U.S.C. § 3563(a) (Supp.1991) (listing mandatory conditions of probation); *id.* § 3563(b) (1985 & Supp.1991) (listing discretionary conditions of probation). These conditions include imposition of fines and restitution, as well as significant restrictions on the liberty of a defendant.[5] The conditions, in turn, are backed by the threat of greater penalties should defendant violate them. *See* 18 U.S.C. § 3565 (authorizing revocation of probation upon violations, and impo-

sition of any sentence available for original offense).

■ So, while probation is indeed "an act of grace," *Yates v. United States*, 308 F.2d 737, 738 (10th Cir.1962), it is not a get-out-of-jail-free card. It is instead, a form of punishment. A statute authorizing the maximum term of that punishment is substantive in nature, and therefore must be followed when sentencing an ACA defendant.[6] Although use of the words "like punishment" in the ACA implies similarity, not identity, of punishment, *United States v. Marmolejo*, 915 F.2d 981, 984 (5th Cir. 1990), a sentence of two years probation is not similar to six months probation, and therefore violates the ACA.

■ In so holding, the court declines to follow the decision in *United States v. Duncan*, 724 F.Supp. 286 (D.Del.1989), which held that federal probation statutes preempt state probation statutes in the sentencing of ACA defendants. *Duncan*, 724 F.Supp. at 288. The *Duncan* opinion contains little analysis and, in the opinion of the court, incorrectly relies on *United States v. Pinto*, 755 F.2d 150 (10th Cir. 1985) and similar cases that concerned assimilation of state *parole* statutes.

The present case is more analogous to *United States v. Bosser*, 866 F.2d 315 (9th Cir.1989), where the Ninth Circuit held that a state rule allowing defendant to serve a probation-like sentence in lieu of having a

---

5. For instance, federal felony offenders placed on probation must either pay a fine, make restitution or perform community service work. *See* 18 U.S.C. § 3563(a)(2) (Supp.1991). In addition, the court may order the defendant to refrain from engaging in a specified occupation, business or profession, 18 U.S.C. § 3563(b)(6) (1985); refrain from frequenting specific kinds of places or associating with specific persons, *id.* § 3563(b)(7) (1985); remain in the custody of the Bureau of Prisons during nights, weekends, or other intervals of time, totaling no more than the lesser of one year or the term of imprisonment authorized for the offense, during the first year of the term of probation, *id.* § 3563(b)(11) (Supp.1991); reside at a community corrections facility for all or part of the term of probation, *id.* § 3563(b)(12) (Supp. 1991); or reside in a specified place or area, or refrain from residing in a specified place or area, *id.* § 3563(b)(14) (1985).

6. The court believes the policy concerns underlying the decision in *United States v. Pinto*, 755 F.2d 150 (10th Cir.1985) are not present here. In *Pinto*, the Tenth Circuit held that the Assimilative Crimes Act ("ACA") does not require a federal judge to follow state law concerning parole terms, including good time credits. *Pinto*, 755 F.2d at 154. To hold otherwise, the *Pinto* court said, would result in treating ACA prisoners different from all other federal prisoners, thus frustrating the policy of uniform correctional administration. *See id.* In this case, however, imposing a shorter term of probation pursuant to state law poses no threat to uniform federal probation policies. Sentencing ACA defendants within the probation range provided by state law is no different from applying state law to determine the applicable range of other forms of punishment, such as fines or imprisonment.

felony put on her record was "punishment" within the meaning of the ACA. The defendant in *Bosser* pleaded guilty to the charge of forgery, then moved to defer acceptance of her plea pursuant to a Hawaii statute that allowed the court to defer the plea upon imposition of certain probation-like conditions. If the defendant complied with the conditions, the court could dismiss the charges.

The magistrate in *Bosser* granted defendant's request to defer acceptance of her plea, but the district court reversed, holding that the Hawaii statute was procedural and thus not assimilated by the ACA. In reversing the district court, the Ninth Circuit held that the Hawaii deferred acceptance rule was a form of "punishment" within the meaning of the ACA. The *Bosser* court found that the deferred-acceptance rule reflected Hawaii's judgment that in some circumstances crime was more appropriately sanctioned by a probation-like sentence than by the stigma of a permanent criminal record. *Bosser*, 866 F.2d at 317.

In this case, the Utah Legislature has made a judgment concerning the maximum probationary term for defendants convicted of Class B misdemeanors. The sentencing judge in an ACA prosecution in Utah must respect that judgment if an assimilated crime is to be punished "only in the way and to the extent that it would have been punishable" in state court proceedings. *United States v. Press Publishing Co.*, 219 U.S. 1, 10, 31 S.Ct. 212, 214, 55 L.Ed. 65 (1911). In addition, application of state law regarding the maximum term of probation best effectuates the ACA's goal of intrastate sentencing uniformity. *See United States v. Mayberry*, 774 F.2d 1018, 1021 (10th Cir.1985) (fundamental policy underlying ACA is to ensure that those engaging in a non-federal crime on a federal enclave be treated as if crime occurred in the surrounding state).

## CONCLUSION

The probation termination period for misdemeanants provided in Utah Code § 77–18–1(7)(a) is assimilated for purposes of determining a "like punishment" under the ACA. Because defendant's alleged probation violations occurred after termination of the maximum six-month probationary term provided by Utah Code § 77–18–1(7)(a) (1988), this court possessed no subject matter jurisdiction over the defendant and thus no power to revoke defendant's probation.

Based on the foregoing and good cause appearing,

IT IS HEREBY ORDERED as follows:

1. The criminal judgment and sentence entered March 27, 1991 against defendant is reversed.

2. This order shall suffice as the court's ruling in this matter and no further order need be prepared by counsel.