_____

No. 97-1261
_____

United States of America,          *
                                    *
        Plaintiff - Appellee        *
                                    *  Appeal from the United States
    v.                              *  District Court for the
                                    *  District of South Dakota.
Dwaine Julius Engelhorn,            *
                                    *
        Defendant - Appellant       *


_____


Submitted: June 10, 1997

Filed: July 30, 1997
_____

Before MURPHY and HEANEY, Circuit Judges, and BOGUE,[*] District
    Judge.
_____

BOGUE, Senior District Judge.

On October 26, 1996, Dwaine Julius Engelhorn pled guilty to
attempted indecent exposure on an Indian reservation.  Engelhorn
was charged under the Assimilative Crimes Act because his crime
occurred within Indian Country and his victim was an Indian. 18

*The HONORABLE ANDREW W. BOGUE, United States District
Judge for the District of South Dakota, sitting by
designation.

U.S.C. § § 13 and 1152.  Because Engelhorn had three prior sexual contact convictions, the crime he attempted to commit would have been punishable as a class 6 felony under South Dakota law pursuant to S.D.C.L. § 22-24-1.  Section 22-24-1 carries with it a maximum sentence of two years in prison, a $2,000 fine, or both. S.D.C.L. § 22-6-1(8).   Under S.D.C.L. § 22-4-1(2), however, "if the attempted crime is punishable by imprisonment in the state penitentiary for any time less than five years, the person guilty of such attempt is punishable by imprisonment in a county jail for not more than one year."  Thus, the maximum term of incarceration the district court[1] could impose on Engelhorn under state law was one year.

At the sentencing hearing, the defendant objected to any imposition of a period of supervised release in the event the court imposed the maximum custodial sentence of one year.  The district court, however, imposed a custodial sentence of 12 months, overruled the defendant's objection, and included a one year period of supervised release in the sentence pursuant to 18 U.S.C. § 3583(a).

On appeal, Engelhorn argues that imposition of the period of supervised release violates the "like punishment" provision of the Assimilative Crimes Act (ACA) 18 U.S.C. § 13, and is therefore impermissible.  He argues that if he had been sentenced to the maximum term possible by a South Dakota court, he would have been ineligible for parole or probation after serving that sentence and would thereafter be a free man.  Imposition of the one year supervised release, he maintains, far exceeds the maximum sentence he could receive in state court, is not a "like punishment" when

_____

[1]The Honorable Lawrence L. Piersol, United States District Judge, District of South Dakota.

-2-

compared to state law, and therefore violates the ACA. We disagree.

I.

Our review of the district court's application of the Sentencing Guidelines is de novo. United States v. Schaffer, 110 F.3d 530 (8th Cir. 1997).

Congress enacted the Assimilative Crimes Act for the purpose of filling the voids in the criminal law applicable to federal enclaves created by the failure of Congress to pass specific criminal statutes. United States v. Butler, 541 F.2d 730, 733-34 (8th Cir. 1976). The Act provides that in the absence of a governing federal statute, a person who commits an act or omission on a federal enclave which act or omission is punishable under state law "shall be guilty of a like offense and subject to a like punishment." 18 U.S.C. § 13(a). The ACA does not contemplate selective assimilation of state criminal laws. The federal courts, however, have recognized an exception to this general rule where there is a need to promote federal policy. *See*, United States v. Teran, 98 F.3d 831 (5th Cir. 1996); United States v. Reyes, 48 F.3d 435 (9th Cir. 1995); *and* United States v. Kelly, 989 F.2d 162 (4th Cir. 1993). Thus, although a federal prisoner is convicted and sentenced in accordance with the ACA, he is still subject to federal correctional policies. *See*, United States v. Harris, 27 F.3d 111 (4th Cir. 1994).

Initially, it is important to note that if the defendant had been convicted of a federal misdemeanor and sentenced to a maximum penalty of one year incarceration, the district court properly could have imposed an additional one year period of supervised

release. 18 U.S.C. § 3583. That is, the total time involved in a term of imprisonment and supervised release may exceed the maximum term of incarceration authorized by the substantive federal statute under which a defendant is convicted. United States v. Watkins, 14 F.3d 414 (8th Cir. 1994); *See also*, United States v. Purvis, 940 F.2d 1276, 1279 (9th Cir. 1991)(18 U.S.C. § 3583 authorizes the revocation of supervised release even where the resulting incarceration, when combined with the period of time already served for a misdemeanor offense, will exceed the maximum incarceration permissible under the substantive statute). Section 3583 reads in relevant part: "The court, in imposing a sentence of a term of imprisonment for a felony or misdemeanor, may include as a part of the sentence a requirement that the defendant be placed on a term of supervised release, after imprisonment . . . ." 18 U.S.C. § 3583(a). Authorizing supervised release "as part of the sentence," as opposed to "as part of the incarceration," implies that a term of supervised release is to be imposed in addition to any incarceration authorized by a particular substantive criminal statute. Watkins, 14 F.3d at 415. Such a result furthers Congress' intent, in abolishing the federal parole system, to make the period of allowable supervision that a judge could impose, independent of the amount of time the defendant has spent in jail. *See*, United States v. Montenegro-Rojo, 908 F.2d 425 (9th Cir. 1990). It is the federal policy to give judges the power to make an independent determination of whether a particular defendant needs supervision after his incarceration. Id. at 433. This power is to be exercised in furtherance of the overall purpose of supervised release - to ease the defendant's transition into the community or to provide rehabilitation to a defendant who still needs supervision and training programs after release. United States v. Love, 19 F.3d 415, 417 [n.4] (8th Cir. 1996)(citing S.Rep. No. 225,

-4-

98th Cong., 2d Sess. 124, reprinted in 1984 U.S.C.C.A.N. 3182, 3307).

We must here decide whether the same policy applies where the defendant is charged under the Assimilative Crimes Act yet the substantive state law under which he was convicted provides for no period of supervised release. This issue is one of first impression in our circuit and we are guided by the fourth circuit's opinion in United States v. Pierce, 75 F.3d 173 (4th Cir. 1996)

## II.

In Pierce the defendant was arrested and charged under the ACA with driving while impaired on a United States Military Base in North Carolina. He pled guilty to violating the applicable North Carolina statute prohibiting impaired driving, and was sentenced to one year probation. After the defendant violated his probation, the federal magistrate judge revoked his probation and sentenced him to 30 days incarceration followed by one year of supervised release. Had the defendant been sentenced in state court, however, the maximum punishment he could have received following revocation of his probation was a 60-day term of incarceration.

The defendant argued that because North Carolina law had no provision for imposition of supervised release, he was not subjected to "like punishment" as required by the ACA. North Carolina law, however, provided for parole eligibility at any time upon being incarcerated unless the sentence required a mandatory minimum term of imprisonment. In affirming the defendant's sentence, the Fourth Circuit Court of Appeals reasoned that because parole under state law, and supervised release under federal law, serve similar functions of guided re-entry into society following a period of incarceration, supervised release is "like" parole for

purposes of the ACA. Pierce, 75 F.3d at 177. Thus, the Pierce court concluded, the defendant's sentence of incarceration plus a term of supervised release did not violate the ACA's requirement that he be subject to "like punishment." Id.

In applying the ACA, federal courts have consistently held, as did Pierce, that the "like punishment" provision of the ACA requires only that a similar sentence be imposed, and not necessarily an identical one. Federal courts are not completely bound by state sentencing requirements. *See*, *e.g.*, Reyes, 48 F.3d at 438 (federal and state sentences need not be identical under the ACA); Harris, 27 F.3d at 115 ("like punishment" does not encompass every incident of a state's sentencing policy); United States v. Marmolejo, 915 F.2d 981, 984 (5th Cir. 1990)("like" implies similarity, not identity); United States v. Garcia, 893 F.2d 250, 254 (10th Cir. 1989)("Efforts to duplicate every last nuance that would be imposed in state court has never been required."). For purposes of the ACA, therefore, parole and probation under state law are "like" supervised release under federal law if they serve similar functions and achieve similar goals. The court in Marmolejo held, for example, since parole and supervised release both occur following a term of imprisonment, involve government supervision, and serve to facilitate a prisoner's transition into society, they are "like" for purposes of the ACA. Marmolejo, 915 F.2d at 985. Similarly, in Reyes the court found that because supervised release and probation occur after imprisonment, and both involve governmental supervision after release, they are similar enough to constitute "like punishment." Reyes, 48 F.3d at 438.

Although South Dakota law has no provision for supervised release following one's incarceration, it does provide for parole or probationary release prior to the expiration of a defendant's

-6-

maximum potential term of incarceration for certain offenses. *See*, S.D.C.L. § § 24-15-1.1 (parole); *and* 23A-27-12 (probation). Probation is an option available to state judges in fashioning appropriate sentences for defendants convicted of a misdemeanor offense under South Dakota law. S.D.C.L. §§ 23A-27-12 and 23A-27-18.1.  Similar to a supervised release under the federal system, probation under South Dakota law is discretionary and conditional, involves a period of government supervision, and a probationer can be re-incarcerated upon revocation of his probation. S.D.C.L. § 23A-27-19.1; State v. Oban, 372 N.W.2d 125 (S.D. 1985); State v. Elder, 95 N.W.2d 592 (S.D. 1959).  Moreover, probation is imposed "with the purpose of achieving the goal of rehabilitation, the accomplishment of which will serve to protect the public during the period of probation, as well as thereafter." State v. Cummings, 262 N.W.2d 56, 61 (S.D. 1978); S.D.C.L. § 24-15-11.

If Engelhorn had been convicted and sentenced for the same misdemeanor offense in a South Dakota state court, he could have faced a sentence comprised of a period of incarceration, followed by a period of probation. S.D.C.L. § 23A-27-18.1.  Because probation, under South Dakota law, can follow a term of incarceration, involves government supervision, and serves society's goal of rehabilitation, the sentence imposed by the district court--a period of incarceration plus a term of supervised release--was like a punishment the defendant could have faced in a state court.  In this case, therefore, supervised release is a "like punishment" for  ACA purposes. *See*, Pierce, 75 F.3d at 177.

III.

Engelhorn maintains that imposition of the one year supervised release in addition to the term of incarceration far exceeds the

-7-

maximum sentence he could receive in state court, and in that manner violates the "like punishment" requirement of the ACA. In Pierce, the defendant made a similar argument, maintaining that the supervised release imposed upon him was impermissible because the total sentence imposed exceeded the maximum term of imprisonment authorized by North Carolina law for the underlying offense. In rejecting this argument, the court reiterated that in the context of defendants convicted of violating federal criminal statutes, supervised release is not considered part of the incarceration portion of a sentence, and is therefore not limited by the statutory maximum term of incarceration. Id. at 178. Moreover, the court found, a federal court will not adopt provisions of state law that conflict with federal sentencing policy. Id. The court concluded that "[s]ince under federal policy supervised release is considered distinct from incarceration and available in addition to any term of imprisonment, adopting Pierce's argument would create an ACA sentencing rule that conflicts with federal sentencing policy regarding the imposition of supervised release." Id. The court refused to create a sentencing exception for ACA defendants. We agree and now hold, although the term of incarceration imposed upon a defendant convicted under the ACA may not exceed that provided by state substantive law, the total sentence imposed--consisting of a term of incarceration followed by a period of supervised release--may exceed the maximum term of incarceration provided for by state law. See, Pierce, 75 F.3d at 178.

IV.

Engelhorn argues the Pierce case is legally and factually distinguishable from this case, however, in that the defendant in Pierce was sentenced to less than the maximum possible term of incarceration under state law. Thus, parole would have been

available to that defendant under state law, whereas in this case, Engelhorn would not have been eligible for any parole or probation under South Dakota law because he was sentenced to a maximum one year term of incarceration.  Whether supervised release is a "like punishment," he argues, depends upon whether a similar punishment is actually available under state law, and not precluded by imposition of the maximum possible term of incarceration.  As noted, however, the district court may impose supervised release upon an ACA defendant in addition to a term of incarceration, the combination of which could result in a sentence in excess of the maximum period of incarceration allowed by state law.  Engelhorn would have us create an exception to this rule for ACA defendants sentenced to the maximum term of incarceration under the assimilated state law.  This we cannot do.

In abolishing the federal parole system, Congress intended to make the length of one's post-incarceration supervision dependent solely upon his need for supervision, rather than upon the length of his original prison term. Montenegro-Rojo, 908 F.3d at 432. Under the old system, the length of time a defendant could be supervised on parole following imprisonment, and the length of time for which he could be re-incarcerated following parole revocation, were dependant on the length of his original term of imprisonment. Id. (citing, S.Rep. No. 225, 98th Cong., 2d Sess. 122-24, reprinted in 1984 U.S.Code Cong. & Admin.News 3182, 3305-07).  A parolee remained under the control of the Attorney General until the expiration of the maximum term of imprisonment to which he was sentenced.  Thus, the smaller the percentage of his term of imprisonment a prisoner actually spent in prison, the longer his period of parole supervision would be. Id. at 433.  Situations arose where those worse-behaved prisoners who served at or near the maximum term of prison and who were most in need of post-

incarceration supervision, would get very little supervision because they were ineligible for early release on parole. Id.

Under the new supervised release system, the length of post-incarceration supervision is dependent solely on the defendant's need for supervision after his release, regardless of the length of time of his prison term.  "[T]he question whether a defendant will be supervised following his term of imprisonment is dependant on whether the judge concludes that he needs supervision . . . ."  Id. In making this determination the sentencing court must consider, in part, the nature and circumstances of the offense, the history and characteristics of the defendant, and the need for deterrence, rehabilitation, and public safety. *See*, 18 U.S.C. §§ 5383(c) and 3553.

The Sentencing Guidelines, including the provisions for supervised release, were made applicable to the ACA in 1990 by congressional amendment to 18 U.S.C. § 3551(a).[2] *See*, Reyes, 48 F.3d at 437.  It is Congress' intent, therefore, to give judges the discretion to impose a maximum term of incarceration plus a period of supervised release, upon those defendants, including ACA defendants, whom the judges deem appropriate candidates for post-incarceration supervision.  Moreover, this discretion is to be exercised upon considerations independent of the length of prison time, including the maximum term, imposed upon or served by the

---

[2]Section 3551(a) reads in relevant part:
    Except as otherwise provided, a defendant who has been
    found guilty of an offense described in any Federal
    statute, including sections 13 and 1153 of this title . . .
    shall be sentenced in accordance with the provisions of
    this chapter so as to achieve the purposes set forth in
    subparagraphs (A) through (D) of section 3553(a)(2) to the
    extent that they are applicable in light of the
    circumstances of the case.

defendant. Engelhorn's position would make the availability of supervised release contingent upon imposition of less than the maximum possible term of incarceration. If a federal court could not impose supervised release after determining an appropriate sentence of imprisonment, that court might be unable to impose what it determined to be an appropriate length of imprisonment and a period of supervised release upon individuals it determined to be in need of post-incarceration supervision, even though the crime was committed within an area of federal jurisdiction.[3] Engelhorn's position is contrary to the federal correctional policies and must therefore be rejected. *See*, <u>United States v. Burke</u>, 113 F.3d 211 (11th Cir. 1997)(per curiam)(affirming imposition of one year supervised release upon ACA defendant sentenced to maximum one year imprisonment for state misdemeanor violation). Affirmed.

A true copy.

Attest:

CLERK, U. S. COURT OF APPEALS, EIGHTH CIRCUIT.

---

[3]The Facts of this case clearly demonstrate why sentencing courts need the option of imposing supervised release upon ACA defendants following a term of incarceration. Engelhorn had three convictions for sexual abuse of children prior to his conviction in this case. Each subsequent offense, including the offense in this case, occurred within 13 months of his release from prison. Supervised release is clearly necessary to provide Engelhorn the rehabilitation needed to re-integrate him into society and deter him from further criminal conduct.