United States Court of Appeals,

Eleventh Circuit.

No. 97-4216.

UNITED STATES of America, Plaintiff-Appellee,

v.

Diane M. GASKELL, Defendant-Appellant.

Feb. 2, 1998.

Appeal from the United States District Court for the Southern District of Florida. (No. 94-10011-CR-SH), Shelby Highsmith, Judge.

Before DUBINA and BARKETT, Circuit Judges, and HILL, Senior Circuit Judge.

DUBINA, Circuit Judge:

This sentencing appeal presents the question of whether a federal judge in a case governed by the Assimilated Crimes Act ("ACA"), 18 U.S.C. §§ 13 and 7, is permitted to sentence a defendant to a longer term of probation than state law would permit. Although this and other circuits have decided analogous issues under the ACA, no circuit court has ruled on this exact question. We hold that federal judges sentencing under the ACA may exceed the state statutory maximum term for a sentence of probation when necessary to effectuate the policies behind the federal probation statutes, 18 U.S.C. §§ 3561-66.

I. FACTUAL BACKGROUND

In 1987, Diane Gaskell ("Diane") had a son, John Doe ("Doe").[1] Diane married Robert Gaskell ("Robert") in 1989, and the couple moved with Doe, Diane's child from a previous relationship, to the naval base in Key West, Florida, where Robert was an enlisted serviceman in the

[1]To protect the identity of Diane Gaskell's minor son, we will refer to him as John Doe.

U.S. Navy. At the time of the marriage, Diane was pregnant with the couple's child, Kristin Michelle Gaskell ("Kristin"). After living in Key West for several months, Robert and Diane took Doe, then two-and-one-half years old, to the emergency room at Florida Keys Hospital in Key West for a rash on his neck and forehead. The admitting physician noted that Doe had extensive bruising on his cheek, under his eyes, and throughout his body, including his hip and genital area. The pediatrician suspected sexual and physical abuse based on Doe's injuries and his vocabulary of sexually explicit words. In response to questioning by the doctor, Diane stated that Doe had fallen to the floor from his bed which was two feet above the floor. Robert was present but said nothing.

The hospital notified the child protection team of Florida's Department of Health and Rehabilitative Services ("HRS"), and Doe was temporarily removed from the Gaskells' custody and placed with foster parents. Once in foster care, Doe made statements to his caretakers and behaved in a manner that indicated he had been physically and sexually abused. After less than a month in foster care, Doe was returned to his parental home pursuant to a state court order.

On Doe's first day of school in January, 1990, his teacher noticed severe injuries to his penis and notified HRS. HRS again removed Doe from the Gaskell residence. After a hearing, Diane was found to be an unfit mother, and Doe was permanently removed from the Gaskell household. He has since been legally adopted, and the Gaskells were ordered by the court to have no contact with him.

Dr. David L. Corwin ("Dr. Corwin"), Director of the Program on Childhood Victimization and the Law and Director of Child Forensic Psychiatry at the University of Cincinnati, examined Doe and reviewed his medical and psychological history. Dr. Corwin found that Doe was the victim of traumatizing physical, sexual, and psychological child abuse and that he had been maltreated by Diane and Robert.

Thereafter, Diane and Robert were indicted by a federal grand jury in the Southern District of Florida charging them with three counts of child abuse at the U.S. Naval Air Station in Key West. Counts I and II charged the Gaskells with inflicting physical and mental injury on Doe in violation of Florida Statutes §§ 827.04(1) and 777.011. Count III charged the Gaskells with inflicting physical injury on Kristin. Diane and Robert were charged with the state offenses in Counts I through III under the ACA, 18 U.S.C. §§ 13 and 7. Count IV charged Robert alone with involuntary manslaughter in causing the death of Kristin, in violation of 18 U.S.C. § 1112.[2]

Diane agreed to waive indictment and plead guilty to a one count superseding information which charged her with misdemeanor child abuse. Specifically, the superseding information states that Diane, by culpable negligence, inflicted and permitted the infliction of physical injuries and mental injury to Doe, in violation of §§ 827.04(2) and 777.011 of the Florida Statutes, made applicable to places within the special territorial jurisdiction of the United States by the ACA, 18 U.S.C. §§ 13 and 7.

## II. SENTENCING

At sentencing, Diane Gaskell made several objections, including an objection to the length of the probationary term permitted under federal law in this case. The district judge determined that Diane's offense level was six with a criminal history category of I, such that the federal Sentencing Guidelines imprisonment range was zero to six months. Because Diane's offense of conviction is a Class A misdemeanor, the authorized term of probation under federal law is not more than five

---

[2]Kristin died on February 10, 1990, while home alone with Robert. Kristin's autopsy report concluded that she suffered from Whiplash Shaking Infant Syndrome and that she died from internal head trauma. Robert's initial conviction after a jury trial for the involuntary manslaughter of Kristin was reversed based on error in the admission of evidence and an incorrect jury instruction. *United States v. Gaskell,* 985 F.2d 1056 (11th Cir.1993). The original indictment was dismissed without prejudice, and a new indictment issued. Robert pled guilty to Counts I and IV of the instant indictment. His sentence is presently on appeal.

years. *See* 18 U.S.C. § 3561(c)(2). However, under Florida law, the maximum term of incarceration allowable for a first degree misdemeanor is one year, and the term of probation cannot exceed one year. Fla.Stat.Ann. § 775.082(4)(a) (West 1992); *Baldwin v. State,* 558 So.2d 173, 174 (Fla.Dist.Ct.App.1990) (the term of probation cannot exceed the maximum sentence allowed under the Florida Statutes); *Williams v. State,* 402 So.2d 537 (Fla.Dist.Ct.App.1981) (same).

The district court sentenced Diane to five years probation with certain special conditions. The court required that Diane participate in a mental health treatment program, disclose the nature of her conviction to her employer, and refrain from engaging in any occupation involving children.

Diane appeals the length of her probation. She contends that because Florida law would have allowed a maximum of one year probation, her five-year probationary sentence violates the ACA which requires that a federal defendant be "subject to a like punishment" to that which state law would impose. 18 U.S.C. § 13.

### III. ISSUE

Whether the district court erred in sentencing Diane to five years of probation for her conviction under the ACA when the maximum term of probation available under state law was one year.

### IV. STANDARD OF REVIEW

The proper length of a sentence under the ACA is a question of law subject to *de novo* review by this court. *See James v. United States,* 19 F.3d 1, 2 (11th Cir.1994) (stating that interpretation of a sentencing statute is a question of law subject to *de novo* review); *United States v. Pompey,* 17 F.3d 351, 353 (11th Cir.1994) ("The district court's interpretation of the sentencing guidelines is subject to *de novo* review.").

### V. DISCUSSION

Diane argues that the express terms of the ACA incorporate into federal law not only the state offense and its elements, but also the punishment prescribed by state law. The ACA authorizes federal courts to exercise jurisdiction over violations of state law that occur in the special maritime or territorial jurisdiction of the United States if no federal statute proscribes such violations. 18 U.S.C. § 13. The ACA, as it read in 1989,[3] provided:

> Whoever within or upon any of the places now existing or hereafter reserved or acquired as provided in section 7 of this title, is guilty of any act or omission which, although not made punishable by any enactment of Congress, would be punishable if committed or omitted within the jurisdiction of the State, Territory, Possession, or District in which such place is situated, by the laws thereof in force at the time of such act or omission, *shall be guilty of a like offense and subject to a like punishment.*

18 U.S.C. § 13(a) (emphasis added). Diane's position is that the ACA's "like punishment" language requires a district court judge to sentence an ACA defendant within the sentence duration limits for probation as well as incarceration.

Prosecution under the ACA is for enforcement of federal law assimilating a state statute, not for enforcement of state law. *United States v. Brown,* 608 F.2d 551, 553 (5th Cir.1979).[4] The purpose of the ACA is to provide a body of criminal law for federal enclaves by using the penal law of the local state "to fill the gaps in federal criminal law." *Id.* (quoting *United States v. Prejean,* 494 F.2d 495, 496 (5th Cir.1974)). The government can turn to state law for prosecution only if no act of Congress directly makes a defendant's conduct punishable. *Id.*

Although no United States Court of Appeals has considered the question of whether a

---

[3]The superseding information alleged that the criminal acts took place during 1989. Although 18 U.S.C. § 13 has been amended several times since 1989, the pertinent language relied upon by Diane has not changed.

[4]In *Bonner v. City of Prichard,* 661 F.2d 1206 (11th Cir.1981)(en banc), the Eleventh Circuit Court of Appeals adopted as binding precedent the decisions of the former Fifth Circuit issued before October 1, 1981.

sentence of probation under the ACA can exceed that allowed by state law, two district courts have addressed this question, reaching opposite results. Diane relies on *United States v. Peck,* 762 F.Supp. 315 (D.Utah 1991), in which a federal magistrate sentenced the defendant to two years probation, a $250 fine, community service, and a special assessment for driving with a suspended license. Under Utah law, the maximum penalty was six months imprisonment and a $1,000 fine, and probation for the violation automatically terminated after six months. *Id.* at 318 Peck violated his probation and moved to terminate revocation proceedings on the ground that the alleged probation violations occurred after the termination of the maximum six-month probation period allowed by state law. *Id.* at 317.

The district court in *Peck* concluded that probation was punishment within the meaning of the ACA's "like punishment" language and construed this language to mandate that a probationary sentence under the ACA fall within the maximum and minimum terms permitted under state law. 762 F.Supp. at 318-19. In doing so, the district court relied on *United States v. Press Publishing Co.,* 219 U.S. 1, 31 S.Ct. 212, 55 L.Ed. 65 (1911) which stated that an assimilated crime may be punished "only in the way and to the extent that it would have been punishable" in state court. *Id.* at 10, 31 S.Ct. at 214.[5] The court determined that it lacked subject matter jurisdiction over Peck and, thus, could not revoke his probation, because he had already served over six months of the two-year probationary sentence imposed by the magistrate while state law authorized only six months of probation. *Id.* at 320.

The other district court addressing the same issue relied on an exception to the ACA's

---

[5]The government's brief points out that the Supreme Court in *Press Publishing,* 219 U.S. at 10, 31 S.Ct. at 214 interpreted the ACA as it read before a 1909 amendment that inserted the current "like punishment" language in place of a previous "same punishment" requirement. *See* Ch. 321, § 289, 35 Stat. 1145, Mar. 4, 1909.

assimilation provisions for cases in which a state penal statute conflicts with an important federal policy. *United States v. Duncan,* 724 F.Supp. 286, 287-88 (D.Del.1989). In *Duncan,* a magistrate judge sentenced the defendant to 18 months probation for an assimilated state charge for alcohol-related reckless driving. Under Delaware law, the maximum probationary sentence was 12 months. *Id.* at 287. After Duncan served 12 months of probation, the magistrate judge revoked his probation and sentenced him to 30 days incarceration. The district court affirmed the validity of the 18 month sentence, stressing that the policies expressed in the federal probation law preempted the conflicting state statute. *Id.* at 288. The *Duncan* court relied on the reasoning in several circuit court opinions dealing with federal parole policies, applying them to the context of probation. *Id.* (citing *United States v. Pinto,* 755 F.2d 150, 154 (10th Cir.1985) (holding that a federal parole statute preempted a state statute); *United States v. Vaughan,* 682 F.2d 290, 294-95 (2nd Cir.1982) (same); *United States v. Smith,* 574 F.2d 988, 992 (9th Cir.1978) (same)).

Determination of parole terms is one of the areas in which courts have held that federal law must preempt state law assimilated under the ACA to preserve federal sentencing policy. The Second, Ninth, and Tenth Circuits have held that the ACA does not require a federal court to follow state law concerning parole terms. In *Vaughan,* the Second Circuit reasoned that federal correctional policies must govern the term of minimum confinement and parole eligibility to preserve the correctional administration of federal prisons. 682 F.2d at 294 (explaining that state law in areas such as good time credits would conflict with federal policies). Although the *Vaughan* court maintained that federal courts must apply state law in determining the range of years for a sentence of incarceration, it refused to bind federal courts to follow state law regarding minimum terms of confinement. *Id.; see also United States v. Pinto,* 755 F.2d at 154 (adopting the rule and reasoning of *Vaughan*); *United States v. Smith,* 574 F.2d at 992 (stating that application of state parole policy

would be disruptive to correctional administration).

In another departure from state sentencing law, the Fifth Circuit in *United States v. Davis,* 845 F.2d 94 (5th Cir.1988), held that a mandatory $50 special assessment under 18 U.S.C. § 3013 should apply to an ACA defendant despite the conflict with a $15 special assessment required under Texas law. The court reached this conclusion after determining that the special assessment was in fact a punishment for purposes of analysis under the ACA's "like punishment" requirement. *Id.* at 98. The Fifth Circuit based its holding on a finding that the term "like" merely implies similarity and "on the principle that state laws should be assimilated through the ACA in light of *federal policy concerns.*" *Id.* at 99 (emphasis added). *But see United States v. King,* 824 F.2d 313, 316-17 (4th Cir.1987) (holding that application of federal assessment which conflicts with state law violates ACA's "like punishment" limitation); *United States v. Mayberry,* 774 F.2d 1018, 1021 (10th Cir.1985) (same).

In *United States v. Teran,* 98 F.3d 831, 835 (5th Cir.1996), the Fifth Circuit applied the exception permitting federal courts to decline full assimilation of state law under the ACA when this would conflict with federal policy in a case involving a challenge to a magistrate judge's jurisdiction. The court rejected the defendant's argument that the ACA required classification of the underlying offense as a felony because state law allowed a maximum penalty of two years for the charged misdemeanor. *Id.* (following *United States v. Kelly,* 989 F.2d 162 (4th Cir.1993), in which the Fourth Circuit relied on the ACA exception for conflicting federal policies to uphold a magistrate judge's jurisdiction).

Of all of the analogous circuit court cases dealing with conflicting federal and state sentencing rules, we conclude that those in the area of supervised release provide the strongest support for the proposition that federal probation statutes must preempt conflicting state law when

necessary to preserve an important federal policy. In *United States v. Burke,* 113 F.3d 211 (11th Cir.1997), this circuit upheld a sentence of one year of imprisonment followed by one year of supervised release in an ACA case where state law provided for a one-year maximum term of incarceration. In a brief *per curiam* opinion, the *Burke* court adopted the reasoning of the Fourth Circuit in *United States v. Pierce,* 75 F.3d 173 (4th Cir.1996).

The court in *Pierce* found that although a term of imprisonment imposed for an assimilated crime may not exceed the state law maximum, federal courts are not absolutely bound by state sentencing requirements. *Id.* at 176. Pierce pled guilty and received a sentence of a one-year term of probation. A magistrate judge revoked his probation for several violations and sentenced him to 30 days imprisonment followed by a one-year term of supervised release. The Fourth Circuit held not only that the court could impose a term of supervised release despite its unavailability under state law, but also that a term of incarceration plus supervised release that exceeded the state maximum term of imprisonment did not violate the ACA. *Id.* at 177-78. The court explained its reasoning:

> [A] federal court will not adopt provisions of state law that conflict with federal sentencing policy. If limited to the maximum term of imprisonment permitted by the state, a district court would be unable to impose an appropriate term of supervised release upon individuals it determined to be in need of postincarceration supervision, even though the crime was committed within an area of federal jurisdiction.

*Id.* at 178. Despite the fact that after revocation of Pierce's probation, the maximum sentence allowable under state law was 60 days of incarceration, the court upheld the sentence of 30 days imprisonment followed by one year of supervised release. *Id.*

The Eighth circuit followed the holding of the Fourth Circuit in *Pierce* with regard to the question of imposing a term of supervised release beyond the maximum sentence of incarceration. *United States v. Engelhorn,* 122 F.3d 508, 512 (8th Cir.1997) (holding that under the ACA, a term

of incarceration and supervised release may exceed the maximum term of incarceration in an assimilated state statute).

There are strong similarities between supervised release and probation. In *United States v. Reyes,* 48 F.3d 435 (9th Cir.1995), the Ninth Circuit's comparison of probation and supervised release led to a determination that federal supervised release and state probation were "like punishment" under the ACA. The most significant distinction between the two sentencing options "is that supervised release is a form of post-imprisonment supervision while probation is supervision in lieu of incarceration." *Id.* at 438 (citation omitted) (involving a sentence of incarceration plus supervised release which did not exceed the state law maximum term). However, "[i]n practice, the similarities between the two forms of punishment are greater than the differences." *Id.* at 438. Both probation and supervised release are discretionary and conditional, involve government supervision, and make a person subject to incarceration upon revocation. *Engelhorn,* 122 F.3d at 512. In addition, both serve the purpose of rehabilitation which furthers the protection of the public during and after the term of government supervision. *Id.*

Because of the strong similarities between probation and supervised release, we extend the reasoning in *Burke, Pierce,* and *Engelhorn* to the context of probation and hold that federal probation policy warrants an exception to the ACA's general requirement that a federal defendant receive a sentence within the maximum and minimum terms set by assimilated state law. *Burke,* 113 F.3d 211 (upholding a sentence of incarceration plus supervised release that exceeds the state maximum sentence term); *Pierce,* 75 F.3d at 177-78 (stressing that exceeding the state law term was necessary to protect federal sentencing policy); *Engelhorn,* 122 F.3d at 512 (same). In this case, the sentencing judge sought to provide Diane much needed supervision, in addition to ensuring that the special probationary conditions imposed would be achieved. The court mandated that Diane

receive mental health counseling as directed by the probation office and that she refrain from engaging in any employment involving young children. Those goals could not meaningfully be effectuated during the course of the one-year term of probation permitted under Florida law. When assimilated state law provisions conflict with federal policy, federal policy controls. *Pierce,* 75 F.3d at 177.

The present case is a clear example of a case in which a federal judge sentencing under the ACA needed to depart from state law to preserve the policies behind the federal probation statutes, 18 U.S.C. §§ 3561-66.[6] *See Duncan,* 724 F.Supp. at 288. A child was severely abused within the territorial jurisdiction of the federal government. Although the district court could have imposed a term of incarceration of up to six months under the federal Sentencing Guidelines, it chose instead to impose a lengthy probationary term to further the important federal policies at stake. The district court took into account the fact that at the time of sentencing, Diane had two other young children. A primary purpose of probation is "rehabilitation, the accomplishment of which will serve to protect the public." *Engelhorn,* 122 F.3d at 512 (quoting *State v. Cummings,* 262 N.W.2d 56, 61

---

[6]Our holding is consistent with a 1990 amendment to 18 U.S.C. § 3551(a), a provision of the Sentencing Reform Act of 1984. As amended, the statute reads:

> (a) In general.—Except as otherwise specifically provided, a defendant who has been found guilty of an offense described in any Federal statute, *including sections 13 [the ACA] and 1153 of this title,* other than an Act of Congress applicable exclusively in the District of Columbia or the Uniform Code of Military Justice, shall be sentenced in accordance with the provisions of this chapter so as to achieve the purposes set forth in subparagraphs (A) through (D) of section 3553(a)(2) to the extent that they are applicable in light of all the circumstances of the case.

The underlined portion of the provision was added in 1990 and appears to indicate congressional intent to preempt conflicting state correctional law in ACA cases. We are unable to rely on this amendment in deciding this case because it became effective after the relevant conduct for this case had taken place. Nonetheless, it bolsters our decision.

(S.D.1978)). The five-year probationary sentence attempts to ensure the safety of any children with whom Diane might come into contact, including her own, by requiring her to obtain needed counseling and restricting her from employment involving young children.

Moreover, probation allows the government to oversee Diane's rehabilitation and gives the federal court the authority to revoke her probation and sentence her to incarceration if she violates any of the stated conditions. 18 U.S.C. § 3565. The cases upholding a term of supervised release beyond the maximum sentence allowed under state law would support a sentence of incarceration if Diane's probation were revoked, despite the fact that her probationary period exceeded that permitted under state law. *See, Engelhorn,* 122 F.3d at 512; *Burke,* 113 F.3d at 211; and *Pierce,* 75 F.3d at 177-78. If a federal court revokes supervised release, it has the power to sentence the individual to additional incarceration. *See United States v. Proctor,* 127 F.3d 1311, 1313 (11th Cir.1997). Similarly, if Diane were to violate the conditions of her probation, a court could revoke it and sentence her to a term of incarceration within the limits set by Florida law.

Finally, our holding merely permits federal judges the flexibility to impose a term of *probation* in excess of what state law would permit. We leave intact the established rule that a term of incarceration under the ACA cannot exceed the limits set by assimilated state law. *See Vaughan,* 682 F.2d at 294 (stating that "[i]t is a well established principle that a state statute that fixes the length of a prison term should control the sentence imposed by federal courts" under the ACA.); *United States v. Garcia,* 893 F.2d 250, 254 (10th Cir.1989) (explaining that a federal court must stay within maximum and minimum term, but is not required to "duplicate every nuance" of state sentencing law).

## VI. CONCLUSION

The district court determined correctly that the Florida law providing for a one-year

maximum term of probation conflicted with the policies behind the federal probation statute. The sentencing judge could not have given effect to the federal policies of supervision and rehabilitation without exceeding the one-year limit for probation under state law. Pursuant to the exception to the ACA's "like punishment" requirement for cases in which assimilated state law conflicts with federal policy, we affirm Diane's sentence.

AFFIRMED.

BARKETT, Circuit Judge, specially concurring:

I concur because I believe this case is controlled by our precedent in *United States v. Burke,* 113 F.3d 211 (11th Cir.1997). However, I share some of the same reservations expressed by Judge Hill.

HILL, Senior Circuit Judge, specially concurring:

I concur because:

(1) In *United States v. Burke,* 113 F.3d 211, our court adopted the reasoning of the Fourth Circuit (per J. Wilkins) in *United States v. Pierce,* 75 F.3d 173 which aligns us with the approach taken by the district judge in the case, and

(2) the district court did, in sentencing, what ought to have been done for the good of the public, the victims and the defendant.

Yet, I am less than satisfied that, in doing the right thing here, we are doing what we should do. Florida law is "assimilated" into federal law in this case. The district judge found Florida law inadequate to the task before him. He did what federal judges have done in these "assimilated" cases with inadequate state law in the past—the state law is found to be in "... conflict with federal sentencing policy," so it is *dis*-assimilated, so to speak, and replaced. Perhaps the Congress meant for this to be the law. See footnote 5 of our opinion. I hope so.